In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00125-CR


______________________________




KYLE DAVID CURTIS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court


Lamar County, Texas


Trial Court No. 47736




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 One night, not long after midnight, Kyle David Curtis was driving in Paris, Texas, on the 
southeast loop, a four-lane divided highway, when two state troopers observed his vehicle weave
twice across "the inside fog line" and then once "across the broken lane divider line and back," all
in the space of "about several hundred yards as opposed to, let's say, a quarter mile or so." (1) The
officers stopped Curtis and arrested him for driving while intoxicated (D.W.I.).

 A jury convicted Curtis and assessed punishment at ninety days in the county jail and a fine
of $2,500.00. Curtis appeals, asserting four points of error. Because we agree with Curtis that the
initial traffic stop was not justified, we reverse the trial court's judgment without reaching Curtis'
other points of error.

 Curtis claims the trial court erred in admitting, over his motion to suppress, all evidence
gained after officers "illegally stopped Curtis' vehicle without warrant, probable cause, or reasonable
suspicion." It is undisputed that this was a warrantless stop and was without Curtis' consent. The
State asserts, though, that both reasonable suspicion and probable cause support the stop.

 The standard of review for the trial court's ruling on a motion to suppress is abuse of
discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); Freeman v. State, 62
S.W.3d 883 (Tex. App.--Texarkana 2001, pet. ref'd). In a suppression hearing, the trial court is the
sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony. 
The evidence should be viewed in the light most favorable to the trial court's ruling. State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999); Freeman, 62 S.W.3d at 886. We should afford
almost total deference to the trial court's determination of historical facts that the record supports,
especially when the fact-findings are based on an evaluation of the witnesses' credibility and
demeanor. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Freeman, 62 S.W.3d at 886. 
Since the trial court did not make findings of fact or conclusions of law, (2) we should assume that the
trial court made implicit findings that support its ruling, so long as those implied findings are
supported by the record, and should affirm the decision if the trial court's decision is correct on any
theory of law applicable to the case. Ross, 32 S.W.3d at 855-56. 

 The State claims two justifications for this stop: (1) that Curtis was stopped pursuant to an
observed traffic violation and (2) that Curtis was stopped on the officers' reasonable suspicion of his
intoxication. The officers stopped Curtis without a warrant, so the State bore the burden at the
suppression hearing of demonstrating that the stop was reasonable within the totality of the
circumstances. See Russell v. State, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986); Bass v. State, 64
S.W.3d 646, 648 (Tex. App.--Texarkana 2001, pet. ref'd). To briefly stop and detain an individual
for investigative purposes, an officer needs reasonable suspicion, supported by articulable facts, that
criminal activity may be afoot. See Terry v. Ohio, 392 U.S. 1, 30 (1968). To justify a traffic stop,
an officer must have observed specific, objective, articulable facts which, in light of the officer's
experience and personal knowledge, together with inferences from those facts, would warrant a
reasonable person to believe a traffic violation had occurred. See Davis v. State, 947 S.W.2d 240,
242-43 (Tex. Crim. App. 1997); Bass, 64 S.W.3d at 648.

 Because we hold that Curtis' stop is not supported by evidence (1) that Curtis was stopped
pursuant to an observed traffic violation or (2) that Curtis was stopped on the officers' reasonable
suspicion of his intoxication, we reverse Curtis' conviction.

(1) Curtis' Stop Was Not Based on an Observed Traffic Violation

 Curtis was stopped by probationary state trooper Thomas Anderson (3) and Anderson's trainer,
state trooper John Williams. Both officers testified at the suppression hearing. Anderson first
testified to the reason for their stop of Curtis:

 Q. [the State] How did you encounter Kyle David Curtis that night?

 

 A. [Trooper Anderson] Mr. Curtis was the driver of a vehicle that I
observed not maintaining a single lane of traffic, swerving from lane to lane, and I
stopped him for that violation.

 

 Q. Okay. Is that a traffic violation according to the traffic code?

 

 A. Yes.

 

 Q. Was that the only reason you stopped him?

 

 A. Yes.


Williams recalled a similar fact scenario:

 Q. [Counsel for Curtis] . . . Anderson says I observed a maroon Chevrolet
SUV bearing this particular license plate in the inside lane of the east loop weave
across the inside fog line, back on the inside lane, and back across the inside fog line
again. The vehicle then weaved across the broken lane divider line and back. I count
that as being three times he may have left the traffic lane. Is that consistent with your
memory?

 

 A. [Trooper Williams] Yes. I would define that as a considerable amount
of weaving. 

 

 Q. Okay.

 

 A. And if I might add, we're only talking about a relatively short distance. 
We're talking about several hundred yards as opposed to, let's say, a quarter of a mile
or so.

 

Williams said Curtis "just wasn't doing a very good job of keeping the car in one lane at all." 

 The Texas Transportation Code defines the appropriate conduct: 


 (a) An operator on a roadway divided into two or more clearly marked lanes for
traffic:

 (1) shall drive as nearly as practical entirely within a single lane; and

 (2) may not move from the lane unless that movement can be made safely.

Tex. Transp. Code Ann. § 545.060(a) (Vernon 1999) (emphasis added). Curtis contends that
evidence of weaving, without evidence of the weaving being unsafe, is not itself sufficient to
establish a traffic offense. The State does not address this contention on appeal. At the suppression
hearing, the State took the position that weaving alone constituted the offense and that unsafe
movement was not necessary to justify the traffic stop.

 There is no evidence in the record to indicate that Curtis' weaving, outside of its occurrence,
was unsafe. Trooper Anderson testified that he did not recall traffic conditions and did not know the
speed Curtis was driving. Anderson did state that there were no objects, items, obstructions, cones,
people, or animals in the roadway at the time of the stop and that Curtis did not strike any object. 
When asked on cross-examination to explain how Curtis' weaving was dangerous or unsafe,
Anderson answered only that Curtis could have hurt himself or others.

 Q. [Counsel for Curtis] As far as the weaving across the fog line, how
and - how was that particular action dangerous?


 A. [Anderson] How was it dangerous?


 Q. Yes, sir.


 A. With other traffic on the roadway, he could have easily swerved into
another vehicle and caused an accident.


 Q. But there were no other vehicles at that time to your recollection. Is
that right?


 A. I do not remember how heavy the traffic was.


 Q. And I don't think your report mentions how heavy the traffic was
either?


 A. No.


 Q. If I also asked you basically the same question how this particular
action was unsafe, would your answer be the same?


 A. Yes, sir. He could also easily lose control and wreck himself.


We note that the State has not attempted--at trial or on appeal--to justify the stop based on the
community caretaking exception, that is, that Curtis was stopped because he might have been a
danger to himself. The State argues only that safety is not an element of the alleged traffic offense
of weaving out of the lane of travel, consistent with its redirect examination as follows:

 Q. [State] Whenever you initiate a traffic stop, do you have to find a
basis for someone's driving being unsafe before you pull them over?

 

 A. [Trooper Anderson] No.

 

 Q. If someone is weaving inside and out of their lane, do you have to
wait until they strike something to pull them over?

 

 A. No.


The State similarly asked Trooper Williams, "Is weaving also a violation of the traffic code?"
Williams answered, "If they weave across the fog line or across the broken center line from one lane
to the other, yes, it is a violation."

 But merely weaving or swerving across a lane line is not, alone, a traffic violation. Eichler
v. State, 117 S.W.3d 897, 900 (Tex. App.--Houston [14th Dist.] 2003, no pet.). The statute clearly
states that a violation occurs when such movement is made without first ascertaining that "movement
can be made safely." "A violation occurs only when the vehicle fails to stay within its lane and the
movement is not safe or is not made safely." Hernandez v. State, 983 S.W.2d 867, 871 (Tex.
App.--Austin 1998, pet. ref'd); see also Bass, 64 S.W.3d at 651 ("Because there is no evidence in
this case the lane change was unsafe, there was no actual traffic violation.").

 Though the use of the word "unsafe" is not necessary to prove the element, the State must
show that a person of reasonable caution would believe that, given the facts of the case and
experiences related by the officer, the movement could not have been made safely. Eichler, 117
S.W.3d at 900 (referencing Aviles v. State, 23 S.W.3d 74, 77 (Tex. App.--Houston [14th Dist.]
2000, pet. ref'd)). Those courts that have found unsafe weaving to raise a reasonable suspicion of
the violation of Section 545.060 have so found when they were faced with weaving done in
conjunction with other facts indicating danger, such as leaving a bar, driving in heavy traffic,
crossing into a lane of oncoming traffic, or weaving over an extended distance or time. See, e.g.,
Tyler v. State, 161 S.W.3d 745 (Tex. App.--Fort Worth 2005, no pet.) (stopped after anonymous
tip of erratic driving and weaving in heavy traffic on Thanksgiving weekend); Cook v. State, 63
S.W.3d 924 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd) (car speeding out of bar parking lot,
suspiciously pulling into gas station for ten to fifteen seconds, then being driven "all over" two
unmarked roads, before "constantly" crossing into other lane for about two minutes on marked lane-divided road); Griffin v. State, 54 S.W.3d 820 (Tex. App.--Texarkana 2001, pet. ref'd) (after
receiving informant tip that defendant would be carrying heroin, officer saw defendant's car cross
yellow line into lane of oncoming traffic); Martinez v. State, 29 S.W.3d 609 (Tex. App.--Houston
[1st Dist.] 2000, pet. ref'd) (car drifted onto shoulder for only few seconds, but on freeway during
busy traffic); Tex. Dep't of Pub. Safety v. Bell, 11 S.W.3d 282 (Tex. App.--San Antonio 1999, no
pet.) (car crossed into shoulder of lane of oncoming traffic); Gajewski v. State, 944 S.W.2d 450 (Tex.
App.--Houston [14th Dist.] 1997, no pet.) (on two-lane highway, one-third of car crossed into
oncoming lane two to three times). Unlike the foregoing cases in which evidence of weaving was
paired with evidence of other dangerous conduct or circumstances, there was no evidence here that
Curtis crossed into a lane of oncoming traffic, interfered with heavy--or any--traffic on the road,
or sustained his weaving for an extended length of time or distance. The only evidence on any of
these matters is Trooper Williams' testimony that Curtis was not weaving over an extended time or
distance, but, rather, over "a relatively short distance."

 Curtis' actions are more akin to those in which courts have not found reasonable suspicion
of the violation of Section 545.060. See, e.g., State v. Huddleston, 164 S.W.3d 711 (Tex.
App.--Austin 2005, no pet.) (officer saw car leave bar parking lot then slowly drift over fog
line--by a few inches--five times over five to six miles while traveling one to eight miles per hour
under speed limit); Eichler, 117 S.W.3d 897 (car crossed line between middle and fast lanes once
on Interstate Highway 10 in light traffic at 12:30 a.m.); Bass, 64 S.W.3d at 648 (car swerved within
and outside its lane over two and one-half to three miles and was passed by other vehicles); Corbin
v. State, 33 S.W.3d 90, 93 (Tex. App.--Texarkana 2000), rev'd on other grounds, 85 S.W.3d 272
(Tex. Crim. App. 2002) (in course of twenty feet, defendant drove thirteen miles per hour under
speed limit and crossed over fog line once before driving one mile with no further infractions); State
v. Cerny, 28 S.W.3d 796 (Tex. App.--Corpus Christi 2000, no pet.) (car "just barely" swerved into
shoulder of lane of oncoming traffic, then swerved over inside fog line three to four times); State v.
Arriaga, 5 S.W.3d 804 (Tex. App.--San Antonio 1999, pet. ref'd) (van drifted toward center
divider--but within lane--two to seven times near nightclub around 1:50 a.m.); Hernandez, 983
S.W.2d 867 (with few other vehicles around, car "broke the plane dividing the two lanes" or swerved
into adjacent lane by eighteen inches to "couple of feet" at about 1:30 a.m.); State v. Tarvin , 972
S.W.2d 910 (Tex. App.--Waco 1998, pet. ref'd) (car drifted over outside fog line two to three times
at 2:00 a.m. near nightclub).

 Curtis weaved out of his lane only briefly, and only toward the shoulder and toward a lane
of traffic designated for traffic traveling in the same direction. The State introduced no evidence of
danger to anyone on the road, except possibly Curtis himself, and even then failed to argue the
"community caretaking function" under Corbin, 85 S.W.3d 277. Following all of the above cases,
especially Hernandez and Bass, we conclude there is no evidence that Curtis' actions were unsafe. 
The evidence does not support a finding that the officers had a reasonable belief that Curtis violated
Section 545.060, because the evidence does not establish the lack-of-safety element in Section
545.060(a)(2) of the Texas Transportation Code.


(2) Curtis' Stop Was Not Based on Reasonable Suspicion that He Was Intoxicated

 The State asserts that the troopers had both reasonable suspicion to continue an investigatory
detention and probable cause to believe that Curtis was intoxicated after stopping him, and points
to all of the evidence of intoxication the officers gleaned after the traffic stop. That is not, however,
the question at hand. Despite the State's failure to argue the substantive issue, we will address the
proper question on this portion of the motion to suppress: whether the evidence supports the
reasonableness of the troopers' belief, based just on the evidence that preceded the stop, that Curtis
was intoxicated. This analysis will not look at the evidence obtained after the stop. Neither do we
consider any evidence introduced at trial, but only the evidence before the trial court when it heard
the motion to suppress. "On appellate review, we must examine the record as it existed at the time
of the suppression hearing." O'Hara v. State, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000).

 We are left with the question of whether Curtis' observed driving, in the context in which it
was observed, supports a reasonable suspicion of intoxication.

 The State elicited the following testimony from Anderson: 

 Q. [State] As far as a reason why someone may or may not swerve, could
someone swerving also be because they have lost the normal use of their mental and
physical faculties?

 

 A. [Anderson] Yes.

 

 Q. And did you pull Mr. Curtis over to investigate your belief that this
could be the case in his case?

 

 A. Yes.


Curtis' attorney addressed this new reason given for the stop on re-cross examination:


 Q. [Counsel for Curtis] Trooper Anderson, I think you just answered our
question about one of the reasons you pulled him over was to investigate further
although that's not what your initial testimony was, nor that's what your report says. 
Isn't it true that your report refers to you pulling him over for the observed violations
is what the report says and what your earlier testimony was?

 

 A. Yes, sir. There was an observed violation, but I also had a suspicion
that it was intoxication. And I investigated that suspicion based on the probable cause
of the traffic violation.


Although Anderson's testimony is equivocal as to suspicion of D.W.I. as a basis of the stop, viewing
the facts in the light most favorable to the ruling, we will address the sufficiency of the testimony
that Anderson did pull Curtis over because he suspected intoxication. We note that neither officer
testified that anything, other than the weaving itself, led him to suspect intoxication.

 This Court addressed the sufficiency of the evidence of weaving, alone, as a basis of
suspicion of intoxication in the Bass case. In that case, where the pre-stop weaving over a stretch
of two to three miles was the only fact supporting suspicion of intoxication, we held "the State failed
to carry its burden to show articulable facts that demonstrate the reasonableness of the stop on the
basis of a suspicion" of intoxication. Bass, 64 S.W.3d at 650. Curtis' weaving occurred over a much
shorter stretch than did Bass'.

 The Texas Court of Criminal Appeals, addressing an officer's stop of a weaving driver under
the community caretaking function, has noted that, "[g]iven the frequency with which the average
driver occasionally strays over the side stripe of the road, we have difficulty even characterizing this
behavior as 'distress.'" Corbin, 85 S.W.3d at 277. "We cannot turn a blind eye to common sense
and experience. There are myriad reasons why the wheels of a vehicle might drift slightly across a
lane marker a single time." Hernandez, 983 S.W.2d at 870. Trooper Anderson testified that there
are numerous reasons why a person might swerve or weave, including diabetic coma, fatigue,
switching the radio channel, or dropping a sandwich onto the floorboard. Nothing suggests why
intoxication should be suspected over any other possible reason for Curtis' weaving.

 Because there is no evidence in the record that Curtis' weaving was unsafe, or reasonable
suspicion, based on articulable facts before the stop, of Curtis' intoxication, we hold that the trial
court abused its discretion in overruling Curtis' motion to suppress. Because the answer to Curtis'
first point of error is dispositive, we decline to address his further points of error.

 For the reasons stated, we reverse the trial court's judgment and remand this case to the trial
court for further proceedings consistent with this opinion.




 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 24, 2006

Date Decided: October 31, 2006


Publish
1. Here, one of the state troopers was comparing "several hundred yards" with "a quarter mile
or so," both estimations of distance. Of course, 440 yards are in a quarter mile. From the context,
it appears the officer meant that Curtis' driving was observed for something less than a quarter mile.
2. We find in the record no request for any findings or conclusions in connection with the trial
court's ruling on Curtis' motion to suppress.
3. Anderson's trainer referred to Anderson as both a "trooper trainee" and "probationary
trooper." Anderson graduated from the state trooper academy about three months before the
encounter with Curtis.



efinitions */
 table.MsoNormalTable
 {mso-style-name:"Table Normal";
 mso-tstyle-rowband-size:0;
 mso-tstyle-colband-size:0;
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-qformat:yes;
 mso-style-parent:"";
 mso-padding-alt:0in 5.4pt 0in 5.4pt;
 mso-para-margin-top:0in;
 mso-para-margin-right:0in;
 mso-para-margin-bottom:10.0pt;
 mso-para-margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Calibri","sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;}
table.MsoTableGrid
 {mso-style-name:"Table Grid";
 mso-tstyle-rowband-size:0;
 mso-tstyle-colband-size:0;
 mso-style-priority:59;
 mso-style-unhide:no;
 border:solid black 1.0pt;
 mso-border-themecolor:text1;
 mso-border-alt:solid black .5pt;
 mso-border-themecolor:text1;
 mso-padding-alt:0in 5.4pt 0in 5.4pt;
 mso-border-insideh:.5pt solid black;
 mso-border-insideh-themecolor:text1;
 mso-border-insidev:.5pt solid black;
 mso-border-insidev-themecolor:text1;
 mso-para-margin:0in;
 mso-para-margin-bottom:.0001pt;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ­­­­­______________________________

 

                                                             No. 06-09-00223-CR

                                                ______________________________

 

 

                                     THE STATE OF
TEXAS, Appellant

 

                                                                V.

 

                                    CURLEY RAY LOVELY, Appellee

 

 

                                                                                                  


 

 

                                        On Appeal from the 71st Judicial District Court

                                                           Harrison County, Texas

                                                         Trial Court
No. 09-0374X

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            The State of
Texas, appellant, has filed with this Court a motion to dismiss its
appeal.  See Tex. R. App. P.
42.2(a); State v. Miles, 994 S.W.2d
410 (Tex. App.─Waco 1999, no pet.). 
As authorized by Rule 42.2 of the Texas Rules of Appellate Procedure, we
grant the motion.  See Tex. R. App. P.
42.2.

            Accordingly,
we dismiss the appeal.

 

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          January
19, 2010         

Date Decided:             January
20, 2010

 

Do Not Publish