

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-05-00125-CR

_____

KYLE DAVID CURTIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. 47736

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

The jury panel for Kyle David Curtis'[1] trial for driving while intoxicated[2] (DWI) did not include two individuals who indicated earlier that morning that they would not be able to convict someone for the offense without blood or breath evidence or evidence beyond the testimony of one officer. Those two had been struck from a case earlier that morning—one of them by the court sua sponte. Both were struck from Curtis' case sua sponte. Curtis moved to quash the entire panel for the earlier dismissal of these two potential jurors and because, in the earlier case, the panel had been exposed to a lesser offense. At trial, Curtis also objected to evidence concerning portable-breath-test results.

We affirm the trial court's judgment because Curtis has not demonstrated to this Court (1) that the trial court erred in refusing to quash the jury panel based on the dismissal of two members, (2) that the trial court erred in refusing to quash the jury panel based on its exposure to a

---

[1]This case is before us after remand from the Texas Court of Criminal Appeals. On original submission of this case to this Court, we found that the trial court erred in admitting, over Curtis' motion to suppress, evidence obtained as a result of a traffic stop made, in our earlier opinion, without reasonable belief of a violation of the traffic laws and without reasonable suspicion of intoxication. *Curtis v. State*, 209 S.W.3d 688 (Tex. App.—Texarkana 2006), *rev'd & remanded*, 238 S.W.3d 376 (Tex. Crim. App. 2007). The Texas Court of Criminal Appeals reversed our opinion, finding that the officers had reasonable suspicion for the stop. *See Curtis v. State*, 238 S.W.3d 376 (Tex. Crim. App. 2007) (officer could form reasonable suspicion of intoxication from Curtis' late-night weaving). That court remanded this case to us for consideration of Curtis' remaining points of error.

[2]*See* TEX. PENAL CODE ANN. § 49.04 (Vernon 2003).

2

lesser offense in an earlier case, and (3) that the trial court harmfully erred in overruling Curtis' objection to the portable-breath-test results.

*(1)      Curtis Has Not Demonstrated to this Court That the Trial Court Erred in Refusing to Quash the Jury Panel Based on the Dismissal of Two Members*

In two points of error, Curtis contends the trial court erred in denying his motion to quash the jury panel. Both points of error concern the selection of Curtis' jury from the same venire that, earlier in the day, had been questioned in another DWI case, *State v. Sadler*, No. 43672 (County Court at Law, Lamar County, Texas, June 6, 2005).

In his first panel-related point of error, Curtis asserts error in the court's denial of his motion to quash the panel for wrongly excusing two jurors during the Sadler voir dire pursuant to what Curtis alleges were improper commitment questions.[3] The State, in Sadler's voir dire, moved to strike the first of the two jurors for cause, for answers indicating the need for blood or breath evidence or evidence beyond the testimony of one officer. The trial court then sua sponte "excused" that juror from all DWI cases for the day. The court sua sponte "excused" the second juror from

---

[3]*See Standefer v. State*, 59 S.W.3d 177 (Tex. Crim. App. 2001) (three-part test to review commitment questions).

Sadler's case and other DWI cases for the day for the same reason.[4]  Before beginning his voir dire,

Curtis moved to quash the entire panel for the earlier dismissal of these two potential jurors.[5]

Despite presenting authority and argument regarding the propriety of the commitment

questions asked of the two stricken jurors, and the harm analysis for improper commitment

questions,[6] Curtis presents no argument or authority supporting his contention that he was entitled

---

[4]Curtis does not claim error in the court's sua sponte (and ex parte) striking of jurors for cause in his case.  *See, e.g.*, *Warren v. State*, 768 S.W.2d 300, 303 (Tex. Crim. App. 1989) (extending *Green* to non-capital cases); *Green v. State*, 764 S.W.2d 242, 246 (Tex. Crim. App. 1989) (error to sua sponte excuse for cause juror not absolutely disqualified); *see also Tamez v. State*, 205 S.W.3d 32, 37 (Tex. App.—Tyler 2006, no pet.) (finding error in court's sua sponte excusal of jurors for cause not preserved under *Green*); *Alvarado v. State*, 822 S.W.2d 236, 239 (Tex. App.—Houston [14th Dist.] 1991, writ ref'd) (error for court to sua sponte excuse jurors for bias toward defendant, but must object on that basis and show harm).

[5]A summoned, but absent, juror may be brought before the court on writ of attachment.  *See* TEX. CODE CRIM. PROC. ANN. art. 35.01 (Vernon 2006); *cf. Welch v. State*, 373 S.W.2d 497, 501 (Tex. Crim. App. 1964) (if counsel desired to question excused veniremember "he should have sought process to require her to re-appear").  Seeking process to require absent veniremembers to appear before the court is required to preserve error under that article.  *See Coleman v. State*, 881 S.W.2d 344, 351–52 (Tex. Crim. App. 1994); *Bolanos v. State*, No. 08-01-00192-CR, 2002 WL 31320253, at *2 (Tex. App.—El Paso Oct. 17, 2002, no pet.) (not designated for publication) (to preserve complaint regarding missing veniremen, must move to quash panel and seek attachment of absent jurors).

Curtis did not request that the dismissed veniremen be brought back before the court and did not request an opportunity to examine or attempt to rehabilitate the jurors.  Neither has Curtis claimed error in being denied the opportunity to question or rehabilitate the excused jurors.  *See, e.g.*, *Drinkard v. State*, 776 S.W.2d 181, 188 (Tex. Crim. App. 1989) (error to not allow defense the opportunity to rehabilitate juror before dismissing for cause, but harmless on record); *Hash v. State*, 105 Tex. Crim. 78, 286 S.W. 1102 (1926) (same).

[6]*See Sanchez v. State*, 165 S.W.3d 707, 714 (Tex. Crim. App. 2005).  Curtis does not address the harm analysis applied to the court's error in sua sponte dismissing a juror, *see, e.g.*, *Green*, 764

to quash the entire panel for this alleged error. It is incumbent on counsel to cite specific legal authority and to provide legal argument based on that authority. *See* TEX. R. APP. P. 38.1(h); *Ex parte Granger*, 850 S.W.2d 513, 515 n.6 (Tex. Crim. App. 1993); *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992). If a point of error is inadequately briefed, we will not address it. *Vuong*, 830 S.W.2d at 929. "This is especially important where, as in the case at bar, the relevant area of law is not well defined. This Court will not make novel legal arguments for appellant."[7] *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (footnote omitted). Because this point of error is inadequately briefed, we overrule it. *See id.*

*(2)     Curtis Has Not Demonstrated to this Court That the Trial Court Erred in Refusing to Quash the Jury Panel Based on its Exposure to a Lesser Offense in an Earlier Case*

In his other jury-panel point of error, Curtis asserts error in the trial court's denial of his motion to quash the panel because the panel was qualified, in the earlier case that morning, on the range of punishment for a class B DWI before being qualified, in Curtis' case, on the higher range of punishment applicable to a class A DWI. Curtis does not assert that the jury was presented with

---

S.W.2d at 247, and *Alvarado*, 822 S.W.2d at 239; the harm analysis applied to a failure to grant attachment of an absent juror, *see Jones v. State*, 119 S.W.3d 766, 785 (Tex. Crim. App. 2003); or the harm analysis, if any, in refusing a proper request to quash the array.

[7]We are aware of no provision in the Texas Code of Criminal Procedure and no caselaw addressing the quashing of the panel for the dismissal for cause of jurors, whether in the case at bar or as members of an earlier venire. To the extent Curtis' point of error claims error in not quashing a panel under Article 35.01 of the Texas Code of Criminal Procedure, we are unaware of cases applying this principal after the dismissal of a juror for cause. *But see Ward v. State*, 505 S.W.2d 832 (Tex. Crim. App. 1974) (to preserve error for "indiscriminate excuse" of veniremen, must attempt to attach absent jurors after motion to quash).

an inaccurate range of punishment in either case. Rather, Curtis claims that "it was obvious to the jury panel that Curtis' DWI case was somehow more serious" or that the jury concluded that Curtis "was somehow more culpable or evil" than Sadler.[8] Other than presenting authority generally concerning the standard of review of decisions allowing voir-dire questioning, Curtis presents no authority in support of his contention that the court erred in allowing punishment range questions to a previously qualified venire or that quashing the panel is an appropriate remedy.[9] For the reasons stated above, we find this point of error to be inadequately briefed and overrule it. *See* TEX. R. APP. P. 38.1(h); *Rhoades*, 934 S.W.2d at 119; *Vuong*, 830 S.W.2d at 940.

---

[8]Curtis does not show us where in the record he questioned the venire or any of its members on any bias or prejudice in this matter. Neither does he indicate where in the record any such bias or prejudice is shown. *Cf. Bolden v. State*, 683 S.W.2d 822, 823 (Tex. App.—Texarkana 1984, writ ref'd) (no error in service, by several veniremen, on similar jury panel in absence of showing bias or prejudice or showing that peremptory challenges were used against tainted panelists).

[9]In a similar case, where some members of a DWI jury panel had been qualified on a similar crime with the same witnesses the previous day, the court affirmed the denial of the motion to quash the panel since, "Such facts would not disqualify the jurors from serving in this case." *Burleson v. State*, 159 Tex. Crim. 112, 261 S.W.2d 726, 727 (1953); *see also Ruben v. State*, 645 S.W.2d 794 (Tex. Crim. App. 1983) (not addressing propriety of quashing, but finding insufficient similarity between cases to show prejudice). *But see Anderson v. State*, 34 Tex. Crim. 96, 29 S.W. 384 (1895) (challenge to the full array not available for complaint that array has previously heard offense of same character against another party).

6

*(3)    Curtis Has Not Demonstrated to this Court That the Trial Court Harmfully Erred in Overruling Curtis' Objection to the Portable-Breath-Test Results*

In his final point of error, Curtis claims error in the introduction of "unreliable" portable-breath-test results over his objection. Regardless of whether there was preserved error[10]

_____

[10]To preserve error for appeal, a defendant must (1) object, (2) state the grounds with sufficient specificity, and (3) obtain an adverse ruling. TEX. R. APP. P. 33.1; *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Additionally, with some exceptions, "the law in Texas requires a party to continue to object each time inadmissible evidence is offered." *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Finally, the point of error on appeal must correspond to the trial objection. *Wilson*, 71 S.W.3d at 349.

The record indicates the portable breath test was discussed three times: as a discrete part of each of the testifying officers' testimony; and as portrayed on the in-car videotape of the stop, investigation, and arrest of Curtis. In the first instance, the State was questioning Trooper Thomas Anderson, after eliciting testimony of Curtis' performance on various field-sobriety tests:

Q:    What did you do next?
A:    At that time, I asked Mr. Curtis to provide a sample of his breath on a portable breathing - -
       [Curtis' attorney]:    Objection, Your Honor. I object to this line of questioning.
       THE COURT:    Overruled.

In this objection, Curtis stated no basis for the objection, and the grounds are not apparent from the context. As such, the objection is not sufficiently specific and preserves nothing for review. His next objection occurred shortly thereafter:

Q:    Tell us what the portable breath test (PBT) is.
A:    It's just a small box with a straw in it, basically.
Q:    Is that the Intoxilyzer 5000 that we use for breath test evidence in court?
A:    No.
Q:    Okay. It's just a portable breath test that you carry around. Is it - - what is that purpose, is it to determine someone's BAC (blood alcohol content)?
A:    No. It's - - it does show a reading of what their BAC is, but it's used to determine - - to make sure that the alcohol I smell is not him - - like he got

7

            a beer spilt on him or something. It's actually in his lungs, in deep lung air.

Q:      Okay. Did you ask Mr. Curtis to give - - or blow into the PBT?

A:      Yes.

Q:      Did he do that?

A:      Yes.

Q:      Without telling me what the results were, what did it indicate to you?

           [Curtis' attorney]:      I object again, Your Honor. Based on the unreliability of that test.

           THE COURT:      Overruled.

A:      It indicated that there was alcohol, and it was over the legal limit.

Q:      There was alcohol there coming from his person, within his person?

A:      In his breath.

Here, Curtis objected on the basis of unreliability. From the context, it seems Curtis objected only to testimony regarding the determination by the portable breath test of blood alcohol content. To the extent Curtis was objecting to the unreliability of the portable breath test in the determination that alcohol is within someone's lungs, this complaint may not have been preserved when Curtis failed to object to Anderson's earlier testimony regarding that use of the device. Curtis did not make a further objection that Anderson's answer to the question—which included the "result" that Curtis was "over the legal limit"—was not responsive. Neither did Curtis object on any other ground to Anderson's testimony concerning the results. On appeal, his complaint concerns the introduction of unreliable testimony of the results of the test. Because the question to which Curtis objected in his second objection did not appear to seek those results, the objection below may not correspond with Curtis' complaint on appeal.

Later, while the jury was being shown the in-car videotape of the stop, field-sobriety testing, and arrest, Curtis made another objection, outside the presence of the jury:

We're getting to the part on the tape where they are getting ready to use the portable breath test. I just want to offer my objection under - - let's make it 403, the use of the test based on its unreliability is more prejudicial - - more alliprejudicial [sic] than preductive [sic].

The trial court overruled the objection.

Finally, the State also questioned the second officer at the scene, Trooper Johnny Williams:

8

regarding the admission of portable-breath-test results, we conclude that any such error was harmless.

Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that we must disregard a nonconstitutional error if it does not affect a defendant's substantial rights. *See* TEX. R. APP. P.

---

Q: After Trooper Anderson did the three standardized field sobriety tests, did you then help him with another - -

A: Yes.

Q: - - kind of test?

A: Yes.

Q: What was that?

A: That was the portable breath test.

Q: And tell us about the portable breath test.
[Curtis' attorney]: Your Honor. I object to this line of questioning based on my previous objections.
THE COURT: Overruled.

Q: Is that the same thing as the Intoxilyzer 5000 that's used for scientifically proving accurate - -

A: No.

Q: - - test results?

A: It is not.

Q: Okay. What is a PBT?

A: The portable breath test is a - - is an instrument that measures the blood alcohol or breath alcohol. It's used roadside as another sobriety test. It carries no more weight or no less weight than the one-leg stand, horizontal gaze nystagmus, or a walk-and-turn. It simply confirms what we smell. If we have a person that we can smell the odor of alcoholic beverage on, we ask him to blow in the PBT, and it will give us - - it will tell us - - it will confirm that they have a presence of alcohol in their system.

Q: And without telling us the result of the PBT, can you tell us whether or not it confirms the presence of alcohol?

A: Yes.

Q: Did it?

A: Yes.

Curtis never obtained a running objection.

9

44.2(b). In spite of a nonconstitutional error, we will affirm for lack of harm if, after reviewing the record as a whole, we have fair assurance that the error did not have a substantial and injurious effect or influence in determining the verdict. *See Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Instead of considering whether there was other sufficient—or even overwhelming—evidence to support the verdict, we review the whole record and consider the nature of evidence supporting the verdict, the character of the alleged error, and how the erroneously admitted evidence might have been considered in connection with other evidence in the case. *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003); *Motilla v. State*, 78 S.W.3d 352, 357–58 (Tex. Crim. App. 2002). We should consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989); *Fischer v. State*, 235 S.W.3d 470, 475 (Tex. App.—San Antonio 2007, pet. granted).

Curtis was charged with having operated a motor vehicle when he did not have normal control of his faculties because of the introduction of alcohol into his system. He was not charged with having a blood-alcohol content that was "over the limit." The portable breath test was just one of many pieces of evidence tending to establish Curtis' guilt.

The portable breath test was mentioned and discussed briefly, but was not emphasized. In the approximately eighty pages of transcript detailing the evidentiary portion of trial, only three of

those dealt with the portable breath test. In the State's opening statement, covering some seventy-seven lines of text, there was no mention of this test. In the State's initial closing argument, covering 178 lines of text, the test was mentioned in thirteen of those lines. During that mention, the State stated that the "results"—apparently meaning the blood-alcohol content reading produced by the test—are not admissible, but that the purpose of the portable breath test is just to confirm that there was alcohol within the subject's body, as a means of confirming the other evidence of intoxication. The test was not referred to in the State's rebuttal closing argument.

It appears that the State never intended to solicit any evidence of the blood-alcohol reading produced by the portable breath test, but that the witness merely volunteered that. The State's jury argument minimized the blood-alcohol reading.

Besides the challenged evidence of the portable breath testing, the evidence of Curtis' intoxication was strong. The two officers on the scene that night, Anderson and Williams, testified that Curtis was weaving while driving. Both were of the opinion that, based on their observations, Curtis was intoxicated at the time.

Anderson testified to many additional factors tending to show Curtis' intoxication: In the early morning hours, Curtis was coming from Baby Dolls, an adult entertainment business to which patrons could bring their own alcoholic beverages. When Anderson encountered Curtis on the side of the road, Curtis' eyes were "extremely bloodshot and glassy." Curtis admitted to having consumed "about seven beers," and later modified that to five or six. In two field-sobriety tests administered

11

to Curtis, he displayed six out of six clues of intoxication on the horizontal-gaze nystagmus test and three of four clues of intoxication on the one-legged stand test. Curtis also admitted that he knew he should not have been driving at that time.

Williams testified to some additional facts: During his interaction with the officers, Curtis periodically showed an inability to comprehend and confusion. He also argued with the officers over some things out of his control. Both factors, to Williams, tended to confirm the other evidence of Curtis' intoxication.

A videotaped recording of Curtis interacting with officers displays his physical behavior and performance at that time, particularly his performance on the field-sobriety tests; and the jurors could see it for themselves.

After reviewing the record as a whole, we have more than a fair assurance that any error in admitting evidence of the portable breath test did not have a substantial and injurious effect or influence in determining the verdict. Even if evidence of the portable breath test was erroneously admitted, it was harmless in light of the above. We overrule this point of error.

Having overruled Curtis' points of error, we affirm the judgment.


                                              Josh R. Morriss, III
                                              Chief Justice


Submitted Date:        December 20, 2007
Decided Date:          March 18, 2008

Do Not Publish