

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0037-22

---

### BERNARD DANIEL, Appellant

### v.

### THE STATE OF TEXAS, Appellee

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### BELL COUNTY

---

MCCLURE, J., delivered the opinion of the Court in which KELLER, P.J., and HERVEY, RICHARDSON, NEWELL, KEEL and SLAUGHTER, JJ., joined. YEARY, J., filed a concurring opinion. WALKER, J., filed a dissenting opinion.

## <u>O P I N I O N</u>

The State asks whether a mistake of law should apply whenever an officer conducts a search or seizure under an ambiguous law that a majority of this Court had not yet construed, notwithstanding negative precedent in the controlling appellate jurisdiction. We hold the answer to that question is, yes. The officer's reasonable misinterpretation of state

criminal law did not undermine the reasonable suspicion required to conduct the traffic stop.

## BACKGROUND

Appellant filed a pre-trial motion to suppress based on the argument that the officer did not have reasonable suspicion that Appellant was driving while intoxicated. Killeen Police Department Officer John Todd testified that around three in the morning on April 15, 2017, he stopped Appellant for failing to remain in a single lane of traffic. Todd testified that he saw Appellant's vehicle cross the dotted white line dividing the outer lanes from the inner lanes three times. A dashcam video recording shows one of these instances where Appellant veers out of his lane as he navigates a left turn at an intersection. This initial crossing during the turn is plainly visible on the video, but the officer agreed it is difficult to see on the video how Appellant was driving as he got further from the patrol vehicle. There were no other cars near the Appellant's vehicle nor did there appear to be anything else unsafe about Appellant's driving.

Officer Todd initiated a traffic stop. Once the officer approached Appellant, he smelled alcohol on Appellant's breath. Appellant admitted he had been drinking but refused to give a breath sample and refused to participate in all the roadside tests offered. After the officer observed a total of six clues of intoxication, he obtained a warrant for a blood sample. The test results showed Appellant's blood alcohol content was .174. Based on his criminal history, and the events of that morning, Appellant was indicted for felony driving while intoxicated.

During the suppression hearing, Appellant argued that a violation of the failure to maintain a single lane statute, Section 545.060(a) of the Texas Transportation Code, requires the motorist to have strayed from his lane when it was not safe to do so. The State disagreed, noting that the video showed "a very clear failure to maintain a single lane during a left turn," and that this was "a clear violation of the law." According to the State, his car went almost entirely into the inside lane as he entered the roadway.

The trial court denied Appellant's motion, finding that Appellant "turned left and did not remain within his single marked lane"; that "Officer Todd followed to make an investigatory stop"; and that "he indicated that he saw two more instances of not maintaining a single marked lane before the stop which were not unsafe." The trial court concluded that "a warrantless stop was made upon probable cause [sic] which lead [sic] to [Appellant's] arrest and detention for DWI".

## DIRECT APPEAL

On appeal, Appellant challenged the denial of his motion to suppress. The Third Court of Appeals agreed with Appellant and reversed the judgment of conviction. The court below decided this case prior to this Court's opinion in *State v. Hardin*, 664 S.W.3d 867 (2022)(holding that subsection (a) of Section 545.060(a) of the Transportation Code creates only one offense and that it is not a traffic violation to fail to maintain a single marked lane of traffic if such failure does not occur in an unsafe manner). Therefore, the court of appeals resolved that it was bound by its own prior decision in *Hernandez v. State*, 983 S.W.2d 867 (Tex. App.—Austin 1998, pet. ref'd) and reversed Appellant's conviction.

## HISTORY OF THE INTERPRETATION OF § 545.060(a): THE FAILURE-TO-MAINTAIN-SINGLE-LANE

The basis offered by the State for the stop of Appellant's vehicle was that the officer had reasonable suspicion that Appellant violated Section 545.060 of the Texas Transportation Code. That section provides, in pertinent part:

> (a) An operator on a roadway divided into two or more clearly marked lanes for traffic:
> (1) shall drive as nearly as practical entirely within a single lane; and
> (2) may not move from the lane unless that movement can be made safely.

TEX. TRANSP. CODE ANN. § 545.060.

Since its enactment in 1995, interpretations of the failure-to-maintain-single-lane statute (Section 545.060 of the Transportation Code) have varied amongst the intermediate courts.

The First, Second, Third, Fourth, Sixth, Ninth, Thirteenth, and Fourteenth Courts of Appeals read the failure to maintain a single lane statute as requiring both: (1) the failure to drive "as nearly as practical" in a single lane *and* (2) unsafe movement when moving from a single lane. *See Munoz v. State*, 649 S.W.3d 813, 818 (Tex. App.—Houston [1st] 2022); *Fowler v. State*, 266 S.W.3d 498, 502 (Tex. App.—Fort Worth 2008, pet. ref'd) ("Although the statute has two subparts, it does not create two separate offenses, but rather only one: moving out of a marked lane when it is not safe to do so."); *Marrero v. State*, No. 03-14-00033-CR, 2016 WL 240908, at *3 (Tex. App.—Austin Jan. 14, 2016, no pet.) (mem. op., not designated for publication); *Daniel v. State*, 641 S.W.3d 486, 493-94 (Tex. App.—Austin 2021); *State v. Arriaga*, 5 S.W.3d 804, 806-07 (Tex. App.—San Antonio

1999, pet. ref'd); *Curtis v. State*, 209 S.W.3d 688, 693-94 (Tex. App.—Texarkana 2006), *rev'd on other grounds, Curtis v. State*, 238 S.W.3d 376 (Tex. Crim. App. 2007); *Ehrhart v. State*, 9 S.W.3d 929, 930-31 (Tex. App.—Beaumont 2000, no pet.); *State v. Hardin*, No. 13-18-00244-CR, 2019 WL 3484428, at *3 (Tex. App. —Corpus Christi Aug. 1, 2019), *rev'd by State v. Hardin*, 664 S.W.3d 867 (Tex. Crim. App. 2022); *State v. Bernard*, 503 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2016), *judgment vacated on other grounds*, 512 S.W.3d 351 (Tex. Crim. App. 2017).

Alternatively, the Seventh, Eighth, Tenth, Eleventh, and Twelfth Courts of Appeals have interpreted subsection (a) as setting forth two offenses instead of one. *Wilde v. State*, No. 07-15-00432-CR, 2016 WL 3180290, at *3 (Tex. App.—Amarillo June 3, 2016, no pet.)(not designated for publication); *Reyes v. State*, 603 S.W.3d 543, 549 (Tex. App. El Paso 2020, no pet. h.)*; Meras v. State*, 629 S.W.3d 284 (Tex. App.—Waco 2020, *rev'd by State v. Meras*, 665 S.W.3d 604, 605 (Tex. Crim. App. 2023); *Tex. Dep't of Pub. Safety v. Ardoin*, 515 S.W.3d 910, 915 (Tex. App.—Eastland 2017, no pet.); *State v. Virginia South*, No. 12-17-00176 CR, 2018 WL 636085, at *4 (Tex. App.—Tyler Jan. 31, 2018, pet. ref'd) (not designated for publication); *State v. Virginia South*, No. 12-17-00176-CR, 2018 WL 636085, at *4 (Tex. App. —Tyler Jan. 31, 2018, pet. ref'd) (not designated for publication).

*Hernandez – The Third Court of Appeals holds that § 545.060(a) creates a single offense.*

In *Hernandez,* the State contended that a driver's "drift" across a lane marker into another lane of traffic traveling in the same direction, without any evidence that the drifting was unsafe, gave an officer reasonable suspicion to believe that the driver had violated

Section 545.060(a). *Id*. at 869–70.  The Third Court of Appeals concluded that it did not.

*Id*. at 871. Therefore, it decided that Section 545.060(a) creates a single offense and that

no violation occurs without unsafe movement. *Id*. This Court declined to exercise

discretionary review of that court's decision.

*Leming – A fractured[1] Court of Criminal Appeals split in its statutory interpretation of §
545.060(a).*

Eighteen years later, four judges on this Court rejected the Third Court's reasoning

in *Hernandez*, construing Section 545.060(a) as creating two separate offenses:

> it is an offense to change marked lanes when it is unsafe to do
> so; but it is also an independent offense to fail to remain
> entirely within a marked lane of traffic so long as it remains
> practical to do so, regardless of whether the deviation from the
> marked lane is, under the particular circumstances, unsafe.

*Leming v. State*, 493 S.W.3d 552, 559-60 (Tex. Crim. App. 2016)(Opinion Part II by

Yeary, J., joined by Keller, P.J., Meyers and Richardson, JJ.).

*Hardin – The Court of Criminal Appeals formally and authoritatively settles the debate:
§545.060(a) establishes a single offense, not two.*

In *Hardin*, this Court held that the officer had no reasonable suspicion to stop the

defendant when her vehicle's right rear tire briefly touched the dividing line between the

center and right lane of traffic because the State did not prove that the movement was

unsafe. When analyzing § 545.060(a)'s text, the Court remarked that the operative terms

---

[1]In *Hardin*, the Court first noted the distinction between a plurality opinion and a fractured opinion, and then classified *Leming* as the latter. *Hardin*, 664 S.W.3d at fn. 35 (stating that *Leming* "resulted in a tie with neither of the two opposing viewpoints gaining a plurality.")

of the statute—"nearly," "practical," and "safely"—are "clear and unambiguous" and recognized that the dispute is over the number of offenses. *Hardin*, 664 S.W.3d at 873-74. Considering both subsections, the Court determined that a two-offense construction would render subsection (a)(1) unconstitutionally vague and (a)(2) meaningless. *Id.* at 875.

The *Hardin* Court distinguished the factual scenario presented in that case from the basis of the stop in *Leming*, noting that the officer in *Leming* had reasonable suspicion to stop the defendant for driving while intoxicated regardless of whether he had failed to maintain a single lane. *Id*. at 878.

Judge Slaughter wrote separately to suggest that mistake of law would apply, however, the State failed to raise the argument. *Id*. at 879-882. She also noted that reasonable minds can disagree as to the meaning of the language in the statute and pointed to the dissent. *Id*. at 881. She further noted that there existed legitimate disagreements among Texas courts as to the statutory interpretation which shows that the law was not as clear as the majority suggests. *Id*. And as Judge Slaughter recognized, the Fifth Circuit has applied mistake of law to § 545.060(a) in *U.S. v. Valenzuela Godinez*. 816 Fed. App'x 914 (5th Cir. 2020) (not designated for publication). There, the Fifth Circuit reasoned: "In light of the statute's ambiguous text, coupled with the clear divide among Texas courts over its meaning, we hold that [officer's] belief that Valenzuela-Godinez broke the law by failing to maintain a single lane of traffic, even if mistaken, was objectively reasonable. *Id*. at 918.

**CURRENT APPLICATION**

Which brings us now to the case at hand. Because the Third Court of Appeals decided the instant case prior to this Court's decision in *Hardin*, the court below relied on its prior panel decision in *Hernandez* and held that the stop was unlawful because Appellant's failure to maintain a lane was not also unsafe. *Daniel*, 641 S.W.3d at 493-94. However, the majority rejected the State's mistake-of-law argument based on the conflict between *Leming* and *Hernandez*. *Id.* at 494-95. It reasoned that, in the absence of binding precedent from this Court overruling *Hernandez*, an officer acting in the Austin court's appellate jurisdiction could not have been reasonably mistaken.[2]

We granted the State's petition for discretionary review to consider whether the officer's misunderstanding of the law should nonetheless give rise to reasonable suspicion to uphold the stop given "the vast and protracted controversy outlined above over the proper and controlling construction of § 545.060(a)."

**WHAT IS MISTAKE OF LAW?**

The modern application of the mistake-of-law doctrine emerged from *Heien v. North Carolina,* 574 U.S. 54 (2014). In *Heien*, law enforcement had stopped Heien's car on the mistaken belief that he had violated North Carolina law by driving with a taillight out. *Id.* at 57-59. The seizure had led to the discovery of cocaine in the car. *Id.* at 58. The North Carolina Court of Appeals reversed Heien's conviction, holding that the mistake of

---

[2] Justice Goodwin dissented. While she acknowledged that *Leming* did not overrule *Hernandez*, she contended that an officer's adherence to the plurality's construction of the statute in *Leming* is an objectively reasonable mistake of law.

law made the officer's stop objectively unreasonable. *Id*. at 58-59. The North Carolina Supreme Court reversed the lower court's decision finding that a reasonable mistake of law could make a stop reasonable under the Fourth Amendment and remanded the case to the court of appeals. *Id*. at 59. After going up the ladder again, Heien's conviction at the trial court was affirmed. *Id*. at 60.

The Supreme Court found against Heien, holding "[T]here is no reason under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of reasonable mistake of fact, but not when reached by a similarly reasonable mistake of law." *Id*. at 61. The Supreme Court reasoned that mistakes must be objectively reasonable and that the subjective understanding of the law enforcement officer involved is not analyzed. *Id*. at 66. The Supreme Court ultimately determined that stopping Heien was reasonable, emphasizing the ambiguity of the law in question.

## ARGUMENTS AND ANALYSIS

Given the dueling interpretations among the courts of appeals of subsections (a)(1) and (a)(2) of 545.060(a) at the time Officer Todd stopped Appellant, the question we are now presented with is whether Officer Todd reasonably believed the law only required Appellant to fail to maintain a single lane even if it was not unsafe to do so, even if that interpretation differed from the Third Court of Appeals and was later rejected by this Court. *See Heien v. North Carolina*, 574 U.S. 54, 60, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014) (holding reasonable suspicion for vehicle stop "can rest on a mistaken understanding of the scope of a legal prohibition").

Appellant argues that the mistake of law doctrine should not justify a search or seizure in the present case when the stop of Appellant's vehicle under § 545.060(a) was not based on an objectively reasonable misunderstanding that subsection (a) sets forth two offenses instead of one. Appellant sets out three arguments as to why the mistake of law doctrine should not apply. First, he states that this is not that "exceedingly rare case" where the underlying statute poses a "very hard" or "difficult" question of statutory construction. Instead, Appellant argues the statute is neither ambiguous nor vague. Second, Appellant claims that mistake of law here can apply only if we "embrace the fiction" that the officer in this case did not know that in his jurisdiction the law had two components to satisfy to justify his stop of Appellant's vehicle. Appellant argues that Officer Todd did in fact know the law in his jurisdiction.[3] Appellant's third and final argument is that the application of the mistake of law doctrine in this case invites a law enforcement officer to "forum shop" for interpretations of law more favorable to his brand of policing. Alternatively, Appellant

---

[3] During Officer Todd's cross-examination, the following exchange occurred:

Q. Now, Texas Transportation Code, that's the code section you're citing for staying within one lane of travel. You're familiar with that section; is that correct?
A. Yes, sir.
Q. And in that section, what it states is that, "A driver must drive as nearly as practical, entirely within one lane"; isn't that correct?
A. Yes, sir.
Q. And it also states, "and not move from that lane unless it can be done safely." That's what the statute requires; isn't that correct?
A. Yes, sir.
Q. So the statute doesn't say that it's against the law to leave your lane simply and absolutely, does it? In other words, you can—so long as you stay within the lane as nearly as practical as possible; isn't that correct?
A. And safely, yes, sir.
Q. And requirement, "and that you cannot move safely"; isn't that correct?
A. Yes, sir, it is.

claims the mistake of law doctrine could force law enforcement to differentiate between the import of plurality versus majority opinions, to anticipate trends in court decisions, and to search for ambiguity in the law where there is none.

We reject these arguments. Contrary to Appellant's contention, the underlying statute did pose a "very hard" or "difficult" question of statutory construction. As discussed above, when the officer acted here, the body of law regarding § 545.060(a) was unsettled statewide due to competing intermediate court decisions and the inability of this Court to come to agreement as to the intersection between subsections (a)(1) and (a)(2) of 545.060(a). Therefore, any enforcement of § 545.060(a) before *Hardin*, judged under reasonable suspicion or probable cause standards, was objectively reasonable.

Second, we do not find Officer Todd's responses to counsel's questions as to the interpretation of the law in his jurisdiction compelling. It is unclear from this exchange if the officer was answering counsel's questions regarding his understanding of the relevant law as of the date of the offense or after the offense. If anything, this exchange further serves to highlight the pre-*Hardin* confusion surrounding the intersections between subsections (a)(1) and (a)(2) of 545.060(a) among police officers, lawyers, and judges. Nevertheless, Officer Todd's subjective belief regarding whether 545.060(a) created two offenses or one offense is irrelevant to our analysis. *See Heien*, 574 U.S. at 66 ("The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable. We do not examine the subjective understanding of the particular officer involved."). What matters to our analysis is whether it was objectively

reasonable for an officer in the Third Court of Appeals' jurisdiction to think that Appellant's failure to maintain a single lane of traffic was a violation of Texas law. Which brings us to Appellant's third concern: that the application of the mistake of law doctrine in this case invites a law enforcement officer to "forum shop" for interpretations of law more favorable to his brand of policing. We disagree. This argument wrongly presupposes that an officer has a choice in which appellate court his case will be assigned. The Texas Legislature has divided the State into fourteen appellate court districts with criminal jurisdiction, composed by county. *See* TEX. GOVT. CODE § 22.201. In general,[4] a case is appealed from the county of conviction to the court of appeals district that has jurisdiction over that specific county. An arresting officer has no ability to "shop" for a favorable intermediate court.

## CONCLUSION

In April of 2017, there was no controlling interpretation of Section 545.060(a) from the Court of Criminal Appeals and the intermediate courts were split. A controlling interpretation did not arrive until the opinion in *Hardin* issued on November 2, 2022. Therefore, the officer's mistaken interpretation of Section 545.060(a) was "entirely reasonable in view of the nuanced statutory language and the conflicting caselaw from this Court and the intermediate courts of appeals interpreting it." *Hardin*, 664 S.W.3d at 879

---

[4] Some cases may be transferred pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOVT. CODE ANN. § 73.001.

(Slaughter, J., concurring). We therefore reverse the court of appeals' decision and affirm the trial court's judgment.

Delivered: February 14, 2024

Publish