**Joel Neil EICHLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–01–00945–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 26, 2003.

Michael S. McNeely, Baytown, for appellant.

Eric Charles Carcerano, Anahuac, for appellee.

Panel consists of Justices YATES, ANDERSON and FROST.

## OPINION

LESLIE BROCK YATES, Justice.

Appellant, Joel Neil Eichler, pled guilty to possession with intent to deliver a con-

trolled substance and was sentenced to fifteen years' imprisonment. In one point of error, appellant claims the trial court committed reversible error by denying a motion to suppress evidence obtained as a result of an illegal stop. We reverse and remand.

## Factual Background

On June 13, 2000, at approximately 12:30 a.m., Officer Matt Ashby of the Chambers and Liberty County Narcotics Task Force conducted a traffic stop of appellant, who was heading eastbound on Interstate 10. After obtaining appellant's consent to search, Officer Ashby found 446 grams of marijuana and 335 grams of methamphetamine in a cracker box in appellant's vehicle.

Appellant filed a pretrial motion to suppress the fruits of the vehicle search, contending that the initial traffic stop was not justified and, therefore, the court should exclude all evidence obtained as a result of the stop. The only witness who testified at the hearing on appellant's motion was Officer Ashby. Because the details of his testimony are crucial to our determination of the validity of the traffic stop, we cite verbatim the following relevant excerpts:

Q: How did you come into contact with the defendant that morning?

A: I stopped Mr. Eichler on a traffic violation.

Q: And for what violation did you stop him?

A: Failure to maintain a single marked lane of traffic.

Q: What did this involve?

A: This involved him crossing over the left hand—the left line of his lane.

. . .

Q: Officer Ashby, in your—based on your training and experience, what, if anything, does weaving or failure to—

failure to stay in the same lane indicate to you as a possible problem?

A: One of the most important things is usually they're intoxicated. They could be tired or they could be eating, could be changing a radio station, could be on a cell phone. I mean, there's all kinds of different scenarios, and the main thing is the welfare concern of the driver.

Q: And are those also the reasons why you stopped the defendant, to see if he had any of these problems?

A: Yes.

. . .

Q: Was the traffic heavy or light or—

A: It was light.

Q: Was he about the only one eastbound right there in that vicinity?

A: Maybe him and maybe a big truck.

Q: Is that a—how many lanes is that right there? Is that three?

A: That is a three lane highway, yes.

Q: Okay. And what lane was Mr. Eichler in when you noticed him?

A: As far as I can remember—I'm not real sure on this—I believe it was the middle lane.

. . .

Q: And you're saying that the probable cause for the stop was that his—well, you tell us what the probable cause for the stop was.

A: He crossed over the left line of his lane.

. . .

Q: How was it unsafe?

A: Well, I don't know. Next time he goes all the way over and hits the concrete median.

Officer Ashby also testified that there were no cars, cattle, children, debris, or potholes near appellant's vehicle. There

was no testimony concerning the speed at which appellant was driving.

## Motion to Suppress

██ The historical facts are not disputed; therefore, we review the ruling on the motion to suppress de novo. *See Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999). We first consider the legality of appellant's detention. The State argues two grounds as justification for appellant's detention: (1) his alleged traffic violation and (2) the officer's exercise of his community-caretaking function.[1] We will consider each of these arguments to determine whether the stop was legal.

## Traffic Offense

██ An investigative detention requires a police officer to have a reasonable suspicion of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex.Crim.App.1997); *Reynolds v. State*, 962 S.W.2d 307, 311 (Tex. App.-Houston [14th Dist.] 1998, pet. ref'd). The reasonableness of a temporary detention is determined from a totality of the circumstances. *See Woods*, 956 S.W.2d at 38. We determine, using an objective standard, whether the facts available to the officer at the moment of detention warrant a person of reasonable caution to believe that the action taken was appropriate. *See Terry*, 392 U.S. at 21–22, 88 S.Ct. 1868; *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex.App.-Austin 1998, pet. ref'd) (quoting *Davis v. State*, 947 S.W.2d 240, 243 (Tex.Crim.App.1997)). If an officer has a reasonable basis for suspecting a person has committed a traffic offense, the officer may legally initiate a traffic stop. *See McVickers v. State*, 874 S.W.2d 662, 664 (Tex.Crim.App.1993).

██ The State alleges the appellant committed a traffic violation when he made a single swerve over a white hash-marked line. However, making such a maneuver is not a per se violation of any law. *See Aviles v. State*, 23 S.W.3d 74, 77 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Section 545.060(a) of the Transportation Code provides:

> An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely.

Tex. Transp. Code Ann. § 545.060(a) (Vernon 1999). "The elements of failure to drive in a single marked lane are: (1) a person (2) drives or operates (3) a motor vehicle (4) within a single marked lane, and (5) *moves from that lane without first ascertaining that such movement can be made with safety.*" *Hernandez*, 983 S.W.2d at 871 (quoting *Atkinson v. State*, 848 S.W.2d 813, 815 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd)) (emphasis in original). This court must determine "whether a person of reasonable caution would believe that the lane change could not have been made safely given the facts and experiences related by the officer." *Aviles*, 23 S.W.3d at 77.

In *Hernandez*, the defendant's truck crossed partially into the adjacent lane and thus failed to stay in a single marked lane.

---

1. We note that in the present case, the State did not argue to the trial court or on appeal that Officer Ashby stopped appellant based on reasonable suspicion of intoxication. The officer testified that a swerve such as that done by appellant might indicate, in his experience, that a driver is intoxicated. However, Officer Ashby also identified several other reasons why a driver might fail to maintain a single lane of traffic. Officer Ashby never testified that he suspected appellant was intoxicated, nor did the State present any other evidence that would support such a suspicion.

*Hernandez*, 983 S.W.2d at 868. The State failed to show this movement was unsafe or dangerous, and the court concluded the police officer did not have a reasonable basis for believing the defendant had committed a ticketable traffic offense. *Id.* at 871–72. In *Aviles,* this court followed *Hernandez* and held that a multiple lane change, without evidence demonstrating that it was accomplished in an unsafe manner, did not provide a reasonable basis for an officer to believe the driver had committed a ticketable traffic offense. *See Aviles,* 23 S.W.3d at 78; *see also, Benavides v. State,* 2001 WL 101787, * 2 (Tex. App.-Houston [14th Dist.] Feb. 8, 2001, pet. ref'd) (not designated for publication) (factually distinguishing *Hernandez;* driver came up fast on officer and failed to maintain lane by driving over "fog line" onto the highway shoulder); *Cook v. State,* 63 S.W.3d 924, 927 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd.) (found constant crossing over broken white line into other lane constituted reasonable suspicion of lane violation and driving while intoxicated). ·

Like Hernandez, this case involves (1) a single instance (2) of crossing a lane-dividing line with the left front and rear tires of appellant's vehicle (3) into a lane of traffic traveling the same direction (4) when the movement is not shown to be unsafe or dangerous. Just as in *Aviles* and *Hernandez,* the State presented no evidence that appellant's failure to stay in a single marked lane was unsafe. Therefore, Officer Ashby could not have had a reasonable basis for suspecting that appellant had committed a traffic offense.

### Community–Caretaking Exception

█ The State maintains that because Officer Ashby testified the failure to stay in the same lane may indicate the individual is intoxicated, tired, eating, changing a radio station, or talking on a cell phone, and the main concern is the welfare of the driver, the stop was justified under the "community-caretaking" exception.

█ A police officer's duties encompass a community-caretaking function that goes beyond traditional investigation and enforcement of the law. *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Wright v. State,* 7 S.W.3d 148, 151 (Tex.Crim.App.1999). As part of an officer's duty to "serve and protect," an officer "may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe is in need of help." *Wright,* 7 S.W.3d at 151. An officer may not properly invoke the caretaking function if not primarily motivated by it. *See Wright,* 7 S.W.3d at 151. In determining whether an officer acted reasonably in stopping an individual to determine if he needs assistance, we consider the following four nonexclusive factors: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Corbin v. State,* 85 S.W.3d 272, 277 (Tex.Crim. App.2002); *Wright,* 7 S.W.3d at 152.

█ Officer Ashby contends he was concerned that the appellant could have been tired, distracted, or intoxicated. However, under the *Corbin–Wright* factors, we conclude it was unreasonable for the officer to believe appellant needed assistance. The first factor, nature and level of distress, is given the greatest weight. *Corbin,* 85 S.W.3d at 277. Here, there is little to support the conclusion that appellant had any type of distress. According to Ashby's testimony, the cause for his concern was a single instance of swerving

over the dividing line. It was not continual swerving or swerving accompanied by any other erratic behavior. *See, e.g., Cunningham v. State*, 966 S.W.2d 811 (Tex. App.-Beaumont 1998, no pet.) (finding temporary stop of driver was justified when officer observed defendant driving a vehicle with a flat tire about 5 m.p.h. on the shoulder of the road). Officer Ashby acknowledged there could be several non-emergency reasons that would cause a car to weave, including talking and eating. A single swerve alone, as Ashby himself conceded, does not necessarily constitute a driver in distress.

Second, we look to the location of the driver. At the time of the stop, appellant was in the center lane of a three-lane interstate highway. Nothing indicated the area was isolated or that appellant would be unable to obtain assistance if needed. He was traveling along Interstate 10 to Lake Charles, Louisiana—a highly populated and well traveled stretch of road. However, Ashby also indicated there was no traffic, supporting a need to offer assistance. We find these interests balance each other out, making the second factor neutral.

Next, we look to whether appellant was alone and/or had access to assistance other than the officer. *Corbin*, 85 S.W.3d at 278. Here, we find that he did not. Appellant was driving alone in the truck, and the officer reported no other vehicles in the vicinity. It would seem that no other assistance was readily available if appellant were to have a traffic accident.

Finally, we consider the extent to which the individual presented a danger to himself or others if not assisted. This factor weighs against the stop. The risk of falling asleep and losing control of the vehicle is a serious one. It would present a significant traffic danger. However, as in *Corbin*, the distress exhibited by the appellant ended almost immediately and Ashby even conceded that it might have been an isolated incident, such as changing the radio station. Without more to support that appellant actually was asleep or in distress, we find this factor does not support a reasonableness finding.

Applying the *Corbin–Wright* factors, we find Officer Ashby's exercise of his community-caretaking function unreasonable. A single swerve over the dividing-line by the appellant was simply too minor for Ashby to reasonably believe that the appellant was falling asleep and in need of assistance. If appellant were "sleepy or falling asleep while driving, a reasonable person would expect to see more indications of fatigue." *Id.* at 278.

### Conclusion

We conclude that the State did not carry its burden of demonstrating the reasonableness of the stop on the basis of a suspicion that appellant had violated section 545.060(a) of the Transportation Code or as part of the officer's community-caretaking function. Therefore, we reverse the trial court's judgment of conviction and remand the cause to that court for further proceedings consistent with this opinion.