In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00019-CR


______________________________




BENITO CARRILLO, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Criminal Court Number 9


Tarrant County, Texas


Trial Court No. 1026313




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 After the trial court denied his motion to suppress, Benito Carrillo pled guilty to charges of
misdemeanor driving while intoxicated (DWI). See Tex. Penal Code Ann. §§ 49.01(2)(A),
49.04(a) (Vernon 2003) (a Class B misdemeanor). His ninety-day sentence was probated for two
years, and he was fined $550.00. Carrillo now appeals the trial court's denial of his motion to
suppress evidence gathered as a result of the traffic stop. He contends that the officer who stopped
him failed to articulate facts which would justify the traffic stop and, therefore, the trial court erred
by denying his motion to suppress. We will conclude to the contrary and overrule Carrillo's sole
point of error.

I. BACKGROUND 

 On the night of June 19, 2006, Officer David McCoy of the Grand Prairie Police Department
was assisting an officer in the Arlington Police Department in the investigation of a possible
intoxicated driver. As McCoy stood outside his patrol car during that traffic stop, he heard a noise
approaching the scene. That noise, McCoy discovered, was made by Carrillo's vehicle being driven
at about forty miles per hour on a very flat tire. As Carrillo passed the scene of the unrelated traffic
stop, McCoy smelled the burning rubber from the severely damaged tire. Shortly after Carrillo
passed, another officer came to assist in the investigation of the already detained driver, allowing
McCoy to leave that scene and try to catch up to Carrillo's car. 

 McCoy did catch up to the car and noticed that the driver was swerving within his lane and
that Carrillo's car was "riding on [the] rim," causing sparks to fly out from the car. When McCoy
activated his lights, Carrillo pulled over to the right, but abruptly maneuvered into the center turn
lane where he pulled into a parking lot. When Carrillo pulled into the parking lot, what little
remained of the tire came off the wheel and rolled into the parking lot. 

 Carrillo was arrested and charged with DWI. Carrillo filed a motion to suppress, contending 
McCoy was not justified in stopping him. The trial court denied Carrillo's motion, concluding 
McCoy was justified in stopping Carrillo based on reasonable suspicion of criminal activity. After
the trial court denied his motion, Carrillo pled guilty to the charges and was placed on community
supervision for two years. 

II. APPLICABLE LAW

 A. Standard of Review

 We review a trial court's ruling on a motion to suppress under a bifurcated standard of
review, giving almost total deference to the trial court's determination of historical facts that turn on
credibility and demeanor while reviewing de novo other applications-of-law-to-fact issues. See
Johnson v. State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); Carmouche v. State, 10 S.W.3d
323, 327 (Tex. Crim. App. 2000). Appellate courts should also afford nearly total deference to trial
courts' rulings on application-of-law-to-fact questions, also known as mixed questions of law and
fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Appellate courts may review de novo
mixed questions of law and fact not falling within this category. Id. We must affirm the decision
if it is correct on any theory of law that finds support in the record. Osbourn v. State, 92 S.W.3d
531, 538 (Tex. Crim. App. 2002).

 B. When a Stop is Justified

 Violation of a traffic law in an officer's presence is sufficient authority for an initial stop. 
Armitage v. State, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982); Griffin v. State, 54 S.W.3d 820,
822-23 (Tex. App.--Texarkana 2001, pet. ref'd). Generally, the decision to stop an automobile is
reasonable when an officer has reasonable suspicion to believe that an individual is violating the law. 
See Ford v. State, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005); Balentine v. State, 71 S.W.3d
763, 768 (Tex. Crim. App. 2002); Coleman v. State, 188 S.W.3d 708, 716 (Tex. App.--Tyler 2005,
pet. ref'd), cert. denied, ___ U.S. ___, 127 S.Ct. 502 (2006). Reasonable suspicion exists if the
officer has specific, articulable facts that, when combined with rational inferences from those facts,
would lead him or her to reasonably conclude that a particular person actually is, has been, or soon
will be engaged in criminal activity. Ford, 158 S.W.3d at 492. This standard is an objective one that
disregards any subjective intent of the officer making the stop and looks solely to whether an
objective basis for the stop exists. Id. at n.11 (citing Garcia v. State, 43 S.W.3d 527, 530 (Tex.
Crim. App. 2001)); see also Walter v. State, 28 S.W.3d 538, 543 (Tex. Crim. App. 2000) (relying
on Whren v. United States, 517 U.S. 806, 810-13 (1996), to conclude that the traffic violation is the
objectively reasonable basis for the stop and that any ulterior motive of the officer is irrelevant).

 C. Relevant Traffic Provisions

 The Texas Transportation Code prohibits operation of an unsafe vehicle:

 (a) A person commits an offense that is a misdemeanor if the person
operates or moves or, as an owner, knowingly permits another to operate or move,
a vehicle that:


 (1) is unsafe so as to endanger a person;


 (2) is not equipped in a manner that complies with the vehicle
equipment standards and requirements established by this chapter; or


 (3) is equipped in a manner prohibited by this chapter.

Tex. Transp. Code Ann. § 547.004(a) (Vernon 1999). The Code further provides:

 (a) A person commits an offense if the person operates or moves a motor
vehicle, trailer, semitrailer, pole trailer, or mobile home, or a combination of those
vehicles, that is:


 (1) equipped in violation of this chapter or a rule adopted under
this chapter; or


 (2) in a mechanical condition that endangers a person, including
the operator or an occupant, or property.


Tex. Transp. Code Ann. § 548.604(a) (Vernon 1999). Since Sections 547.004(a)(2) and
548.604(a)(1) refer to vehicle equipment, Section 547.612 is also implicated here:

 (a) A solid rubber tire used on a vehicle must have rubber on the traction
surface that extends above the edge of the flange of the periphery.


 (b) A person may not operate or move a motor vehicle, trailer, or
semitrailer that has a metal tire in contact with the roadway, unless:


 (1) the vehicle is a farm wagon or farm trailer that has a gross
weight of less than 5,000 pounds; and


 (2) the owner is transporting farm products to market, for
processing, or from farm to farm.

Tex. Transp. Code Ann. § 547.612 (Vernon 1999).

 A "metal tire" includes a tire the surface of which in contact with the highway is wholly or
partly made of metal or other hard, nonresilient material. Tex. Transp. Code Ann. § 541.203(2)
(Vernon 1999).

III. ANALYSIS

 In Ford, the Texas Court of Criminal Appeals evaluated the officer's testimony that, in his
judgment, Ford had been following too closely in violation of the law. The Ford court held that such
conclusory testimony, void of any facts that would support the officer's judgment, did not satisfy the
State's burden of demonstrating reasonable suspicion. Ford, 158 S.W.3d at 494. 

 Similarly, in Eichler v. State, 117 S.W.3d 897 (Tex. App.--Houston [14th Dist.] 2003, no
pet.), our sister court examined the record to determine whether the traffic stop was justified. The
State contended that the traffic stop was reasonable because Eichler had violated Section 545.060(a)
of the Texas Transportation Code which made it an offense to fail to maintain a single lane. Id. at
900. Section 545.060(a), however, required, inter alia, that the failure to maintain a single lane was
unsafe. See id. When the State failed to elicit testimony that Eichler's failure to maintain a single
lane of traffic was unsafe, the State failed to demonstrate that the officer had formed a reasonable
suspicion that Eichler committed a traffic offense. Id. 

 We find the instant case on more similar footing to State v. Kloecker, 939 S.W.2d 209 (Tex.
App.--Houston [1st Dist.] 1997, no pet.). In that case, Kloecker experienced a flat tire in the early
morning hours. Id. Another motorist had flagged down a deputy, reporting Kloecker as a possible
drunk driver. Id. When the deputy approached Kloecker's vehicle, the wheel was causing sparks
as she continued to drive at five to ten miles per hour. Id. After the deputy signaled her to pull over,
Kloecker stopped the vehicle in the middle of the road and then experienced difficulty in finding her
license. Id. at 209-10. At the deputy's direction, Kloecker stepped out of the vehicle and stumbled
as she did so. Id. at 210. The deputy also detected the odor of alcohol. Id.

 At the suppression hearing, the deputy testified that he stopped Kloecker because he observed
her driving on a tireless wheel and knew that doing so was a traffic offense. Id. The deputy
specified that driving without a tire was "defective equipment, unsafe" and that driving the vehicle
in such a condition endangered other persons on the road. See id. at 210. The court concluded that,
since the deputy observed Kloecker committing a traffic offense, the record showed that the deputy
was authorized to pull her over. Id. 

 Unlike the testimony of the officers in Ford and in Eichler, McCoy, the only witness at the
suppression hearing, provided specific facts that permitted him to determine that Carrillo was
violating a traffic law. The trial court also viewed the videotape from the point in time at which
McCoy activated his lights. The evidence shows the vehicle was not equipped to comply with proper
standards; that Carrillo was driving on a metal tire or a tire without rubber on the traction surface;
such action constituted a traffic violation and presented a danger to Carrillo and other motorists. (1) 
McCoy testified that the traffic was moderate on the street that night. McCoy specifically testified
that driving forty miles per hour on what was essentially the bare wheel was not safe. 

 McCoy was not certain of the source of the law violated, (2) proposing that it might be a city
ordinance against driving on a flat tire. McCoy was very clear, though, that he believed Carrillo was
violating a traffic law by driving on such a deflated tire. His testimony concerning Carrillo's
swerving down the moderately busy road at forty miles per hour as the wheel produced sparks are
objective facts on which the trial court could conclude McCoy had reasonable suspicion Carrillo was
violating any one of several applicable traffic laws. See Tex. Transp. Code Ann. §§ 547.004,
547.612, 548.604 (Vernon 1999). 

 Here, the State had the burden of proving that the traffic stop was reasonable. See Ford, 158
S.W.3d at 492. It carried its burden through McCoy's testimony concerning the condition of
Carrillo's vehicle, the effects that condition had on the operation of the vehicle, the speed at which
he was driving, and the unsafe conditions it posed to Carrillo and the other motorists on the
moderately busy street that night. We conclude the trial court properly denied Carrillo's motion to
suppress. We overrule Carrillo's sole point of error.

 We affirm the trial court's judgment.




 Jack Carter

 Justice


Date Submitted: August 27, 2007

Date Decided: September 5, 2007


Publish 

1. We recognize that a number of similar cases, especially those involving the operation of a
vehicle with a flat tire, address the encounter with law enforcement in terms of the officer's
community care-taking function. See Lebron v. State, 35 S.W.3d 774, 776-77 (Tex.
App.--Texarkana 2001, pet. ref'd) (police officer reasonably exercised community care-taking
function when the officer responded to a reported accident and discovered the defendant driving very
slowly, eventually coming to a stop on the road, with two flat tires); Sweeney v. State, 6 S.W.3d 670,
671 (Tex. App.--Houston [1st Dist.] 1999, pet. ref'd) (when appellant was driving at over forty miles
per hour, in the rain, at night, with a flat tire, officer had reason to stop the appellant, if not to assist
him, then for the safety of others on the road); Cunningham v. State, 966 S.W.2d 811, 813 (Tex.
App.--Beaumont 1998, no pet.) (when driver had flat tire, late at night, in unsafe neighborhood, and
was driving at unsafe speed, community care-taking exception applied).

 As part of an officer's duty to "serve and protect," an officer "may stop and assist an
individual whom a reasonable person, given the totality of the circumstances, would believe is in
need of help." Corbin v. State, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002) (quoting Wright v. State,
7 S.W.3d 148, 151 (Tex. Crim. App. 1999)). This community care-taking function, however, is
"totally divorced from the detection, investigation, or acquisition of evidence relating to the violation
of a criminal statute." Id. at 276-77 (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)). As
a result, a police officer may not properly invoke his or her community care-taking function if the
officer is primarily motivated by a noncommunity care-taking purpose. See Corbin, 85 S.W.3d at
277; Wright, 7 S.W.3d at 151. Here, McCoy did not testify that his primary motivation in stopping
Carrillo was a community care-taking function. 
2. Again, the reasonable suspicion standard is an objective one. See Whren, 517 U.S. at
812-13, and cases cited therein. We need only determine whether the circumstances, viewed
objectively, justify McCoy's actions, not whether he knew the precise provision violated.


 essentially as set out in the will; that she had also told others,
including Jo Nell Ford and Sue Roberts, of her intent to leave her property essentially as set out in
the will; that she set up certificates of deposit at the bank consistent with her statements in the will,
and those dispositions were carried out, apparently unchanged, after her death; that she continued
to have affection for the devisees named in the will with no "falling out"; that she subsequently did
not express or intimate any contrary intention regarding her testamentary intent or regarding the
disposition of her property; and that she was the type of person who would have informed others had
she decided to revoke or change her will.
            Bishop and Parvar contend this evidence is not sufficient to support the court's decision. In
their argument, they rely in part on language in Bailey stating that evidence of continued affection
of a testator was not of any "material significance" to prove that he did not destroy his will, which
had disappeared. See Berry v. Griffin, 531 S.W.2d 394, 397 (Tex. Civ. App—Houston [14th Dist.]
1975, writ ref'd n.r.e.) (evidence of continued affection, standing alone, insufficient and of no
material significance, citing Bailey as authority, but also applying the clear and convincing evidence
standard). The evidence of Capps' continued affection for the Robertses and her church most
certainly did not stand alone, and the standard of proof is now preponderance of the evidence, not
clear and convincing evidence. See Glover, 744 S.W.2d at 940.
            Under these facts, there is sufficient material evidence to support the trial court's findings of
the reason for nonproduction and that the will had not been revoked. We overrule points of error
one through six.
2.  The Evidence Was Sufficient To Show the Will Was Wholly in Capps' Handwriting
            The document at bar is handwritten and is dated July 10, 1996. It purports to devise



property, not of one, but of two people, Ola Maye Capps and Nadine Capps.


 The handwriting is
consistent with the signature of Nadine Capps, and the document was signed by both Nadine and Ola
Maye and contains an acknowledgment of a notary public.
            Bishop and Parvar attack the probate of the will by asserting, in points of error seven and
eight, that it was not properly executed as a witnessed will, and in points nine and ten, that the
evidence was not sufficient that the will was wholly in Capps' hand. We address the will, not as a
witnessed will,


 but as a holograph since the trial court found it to be a holograph and we deem that
issue dispositive here.
            To show a valid holographic will, the proponent has the burden of proving that the instrument
is wholly in the testator's handwriting. Trim v. Daniels, 862 S.W.2d 8, 10 (Tex. App.—Houston [1st
Dist.] 1992, writ denied). "If not self proved . . . a will wholly in the handwriting of the testator may
be proved by two witnesses to his handwriting, which evidence may be by sworn testimony or
affidavit taken in open court." Lopez v. Hansen, 947 S.W.2d 587, 589 (Tex. App.—Houston [1st
Dist.] 1997, no writ).
            A testamentary instrument, intended by the testator as holographic, will be enforced as such,
although it contains words not in the handwriting of the testator, if such other words are not
necessary to complete the instrument and do not affect its meaning. Maul v. Williams, 69 S.W.2d
1107, 1109–110 (Tex. Comm'n App. 1934, holding approved); Watkins v. Boykin, 536 S.W.2d 400
(Tex. Civ. App.—El Paso 1976, writ ref'd n.r.e.); Kramer v. Crout, 279 S.W.2d 932 (Tex. Civ.
App.—Waco 1955, writ ref'd n.r.e.). See generally In re Estate of Jansa, 670 S.W.2d 767, 768 (Tex.
App.—Amarillo 1984, no writ). For our purposes, the document's material which is in other than
Capps' handwriting consists of Ola Maye's signature, the acknowledgment, and the notary public's
signature; those are surplusage to a valid holograph.
            In this case, a number of witnesses examined the photocopy of the will in evidence, testified
as to their familiarity with Capps' handwriting, and identified the handwriting of the will as hers. 
Their testimony, in sum, was that all the dispositive portions of the document were written in Capps'
hand, and it was signed by her. This is sufficient to support probate as a holographic will, and there
is no evidence to the contrary. We overrule points of error seven through ten.
3. The Selection of Personal Representative Is Correct
            In the eleventh and final point of error, Bishop and Parvar allege the court erred by
appointing Devon Roberts as the administrator pursuant to the will. Because we have concluded 
the will was properly probated, this point also fails, because it is based on the assertion that the will
was improperly probated.
            We affirm the judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice
Date Submitted:          November 16, 2004
Date Decided:             January 6, 2005