Reversed and Remanded and Memorandum Opinion filed May 6,
2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00286-CR



James Koteras, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the County Court at Law

Washington County, Texas

Trial Court
Cause No. 08-600



 

MEMORANDUM  OPINION

Appellant, James Koteras, was charged with driving
while intoxicated (DWI).  See Tex. Penal Code Ann. § 49.04 (Vernon
2003).  Appellant pleaded guilty and was sentenced to eighteen months’
community supervision, 100 hours of community service, and assessed a $500
fine.  In three issues, appellant challenges the trial court’s denial of his
motion to suppress, arguing: (1) the traffic stop was conducted without
reasonable suspicion or probable cause; (2) the trial court erred in finding
the officer was acting within his community caretaking capacity when he stopped
and questioned appellant; and (3) the trial court erred in finding the officer
did not initiate the traffic stop; because  appellant stopped on his own volition. 
We reverse the trial court’s denial of appellant’s motion to suppress and
remand for a new trial consistent with this opinion. 

Factual and Procedural Background 

On April 27, 2008, Deputy Shane Ray of the Washington
County Sheriff’s Department arrested appellant for DWI.  Deputy Ray was driving
westbound on Highway 105 on route to another call.  While driving, he noticed
appellant’s vehicle one vehicle ahead of his.  Deputy Ray observed appellant’s driver’s
side tires briefly on the center gravel line.  Deputy Ray pulled his vehicle ahead,
so that he was directly behind appellant.  Shortly after, appellant pulled his vehicle
onto the improved shoulder on the right side of the road to allow Deputy Ray to
pass.  Deputy Ray had no intention of passing appellant and continued to drive
behind him.  Appellant drove back into the main roadway and Deputy Ray slowed
down to increase the distance between the two vehicles.  Deputy Ray wanted to
indicate to appellant that he did not intend to pass him.  For approximately a
minute and a half appellant continued to drive on the main roadway.  Then,
appellant put on his blinker light indicating he was pulling onto the
shoulder.  Appellant’s brake lights came on and he slowed down onto the
shoulder.  As appellant was slowing down onto the shoulder, Deputy Ray turned
on his lights and sirens and pulled his patrol vehicle behind appellant’s
vehicle.  At this point, appellant’s vehicle had almost come to a complete
stop.   

During the suppression hearing, Deputy Ray testified
he pulled appellant over because of the totality of the circumstances,
including appellant’s failure to maintain a single lane and appellant’s pulling
onto the shoulder.  At the conclusion of the hearing, the trial court made oral
findings of fact.  The court found: (1) appellant stopped his vehicle on his
own volition; (2) Deputy Ray did not initiate appellant’s traffic stop; and (3)
when Deputy Ray turned on his lights and sirens he was acting within his
community caretaking capacity to investigate.  After making its findings, the
trial court denied appellant’s motion to suppress.  

Appellant pleaded guilty to DWI, but retained the
right to appeal the motion to suppress.  After being sentenced to eighteen
months’ community supervision by the trial court, appellant timely filed this
appeal.

Discussion

Appellant contends the trial court erred in denying
his motion to suppress because (1) Deputy Ray had no reasonable suspicion or
probable cause to stop appellant and (2) the circumstances of this stop do not
fall under the community caretaking function exception to the warrant
requirement.  Additionally, appellant contends the trial court erred in finding
Deputy Ray did not initiate the stop.  

I.         Standard of Review

            We
review a trial court’s ruling on a motion to suppress under a bifurcated
standard of review, giving almost total deference to the trial court’s findings
of historical facts and reviewing de novo the trial court’s application of the
law.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
Questions of reasonable suspicion and probable cause are reviewed de novo on
appeal.  Garcia v. State, 296 S.W.3d 180, 184 (Tex. App.—Houston [14th
Dist.] 2009, no pet.).  The trial judge is the exclusive trier of fact and
judge of the credibility of the witnesses and the weight to be given to their
testimony at the suppression hearing.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000)  As the trier of fact, the trial court is free to
believe or disbelieve all or any part of a witness’s testimony, even if the
testimony is uncontroverted.  Id.; Marsh v. State, 140 S.W.3d
901, 905 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d).  When reviewing the
trial court’s ruling on a motion to suppress, we must view the evidence in the
light most favorable to the trial court’s ruling.  State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006).  When, as here, the trial court makes
fact findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court’s ruling, supports these fact findings.  Id. 
We then review the trial court’s legal ruling de novo unless its fact findings
that are supported by the record are also dispositive of the legal ruling.  Id. 
We must uphold the trial court’s ruling if it is supported by the record and
correct under any theory of law applicable to the case, even if the trial court
gave the wrong reason for its ruling.  Armendariz v. State, 123 S.W.3d
401, 404 (Tex. Crim. App. 2003).    

            A.        Did
Deputy Ray initiate the stop of appellant?

            We
address appellant’s third issue first because its resolution bears on the
outcome of his remaining issues.  The trial court found that Deputy Ray did not
stop appellant; rather the court found appellant stopped on his own volition.    
Viewing the evidence in the light most favorable to the trial court’s finding,
we agree that Deputy Ray did not initiate the stop.  Deputy Ray’s patrol
vehicle videotape shows appellant putting on his right blinker and his brake
lights, pulling his vehicle towards the shoulder, and slowing down.  Although
appellant was not at a complete stop when Deputy Ray turned on his lights and
sirens, we agree with the trial court that appellant stopped on his own
volition.[1] 
 Appellant’s third issue is overruled.  

            Because
we agree with the trial court that Deputy Ray did not initiate the stop, we
need not address appellant’s first issue: whether Deputy Ray had reasonable
suspicion to stop appellant.  

            B.        Was
Deputy Ray acting pursuant to his community caretaking                                         function?

            Appellant
argues Deputy Ray was not acting pursuant to his community caretaking function
when he questioned appellant because appellant’s conduct did not rise to the
level of distress for the community caretaking function to apply.  Through the
exercise of a police officer’s community caretaking function an officer may
reasonably seize an individual, even without reasonable suspicion or probable
cause that an offense has been committed.  Corbin v. State, 85 S.W.3d
272, 276 (Tex. Crim. App. 2002).  Before deciding whether the community
caretaking function applies, it is necessary to determine whether the exchange
between appellant and Deputy Ray constituted a seizure implicating Fourth
Amendment protection; or whether the exchange was merely a consensual encounter
not protected by the Fourth Amendment.         

                        1. 
Nature of the exchange.

            It
is well settled that not all encounters with the police implicate the Fourth
Amendment’s protection against unreasonable seizures.  Florida v. Bostick,
501 U.S. 429, 434 (1991).  Three categories of interactions between police
officers and citizens are recognized by the Texas Court of Criminal Appeals:
arrests, investigative detentions, and encounters.  State v. Perez, 85
S.W.3d 817, 819 (Tex. Crim. App. 2002).  Unlike investigative detentions and
arrests, which are seizures for Fourth Amendment purposes, an encounter is a
consensual interaction, which the citizen may terminate the encounter at any
time.  See Gurrola v. State, 877 S.W.2d 300, 302–03 (Tex. Crim. App.
1994).  So long as the person remains free to disregard the officer’s questions
and go about his business, the encounter is consensual and merits no further
constitutional analysis.  See Johnson v. State, 912 S.W.2d 227, 235
(Tex. Crim. App. 1995) (citing California v. Hodari D., 499 U.S. 621,
628 (1991)).

            Law
enforcement officers are permitted to approach individuals without probable
cause or reasonable suspicion to ask questions or even to request a search.  See
Florida v. Royer, 460 U.S. 491, 497–98 (1983); State v. Velasquez,
994 S.W.2d 676, 678 (Tex. Crim. App. 1999).  Such an encounter does not require
any justification on the officer’s part.  See United States v. Mendenhall,
446 U.S. 544, 553 (1980); Daniels v. State, 718 S.W.2d 702, 704 (Tex.
Crim. App. 1986), overruled on other grounds, Juarez v. State, 758
S.W.2d 772, 780 (Tex. Crim. App. 1988).  Police officers are as free as any
other citizens to approach citizens on the street and ask for information.  State
v. Garcia-Cantu, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008).  Such
interactions may involve inconvenience or embarrassment, but they do not
involve official coercion.  Id.  Only when the implication arises that
an officer’s authority cannot be ignored, avoided, or ended, does a Fourth
Amendment seizure occur.  Id.     

            Determining
whether specific facts amount to a detention under the Fourth Amendment or a
consensual police-citizen encounter is subject to de novo review because that
is an issue of law—the application of legal principles to a specific set of facts. 
Id. at 241.  The occurrence of a consensual encounter is determined by
the totality of the circumstances and “whether a reasonable person would feel
free to decline the officer’s requests or otherwise terminate the encounter.”  Bostick,
501 U.S. at 436.

            Circumstances
that may indicate a police-citizen interaction is a seizure, rather than a
consensual encounter, include the threatening presence of several officers, the
officer’s display of a weapon, the officer’s display of authority or control
over the defendant by activating the siren or any patrol car overhead lights,
physical touching of the citizen by the officer, the officer’s words or tone of
voice indicating that compliance with the officer’s requests might be
compelled, or flashing lights or blocking a suspect’s vehicle.  Mendenhall,
446 U.S. at 554.

            It
is not completely clear from the trial court’s oral factual findings, but it
appears that the court found an investigative detention occurred when the
officer turned on the patrol vehicle lights.[2] 
Thus, the focus of our inquiry should be on whether appellant, or a reasonable
person in his shoes, would have felt free to leave after Deputy Ray turned on
his patrol vehicle’s lights and sirens.  This test is both objective and fact
specific; “the ‘reasonable person’ test presupposes an innocent
person.”  Garcia-Cantu, 253 S.W.3d at 243 (quoting Bostick, 501
U.S. at 438).  The only show of authority by Deputy Ray in our record is Deputy
Ray’s use of flashing lights and sirens.  Flashing lights and sirens, however,
are not a weak demonstration of authority.  In Garcia-Cantu, the Texas
Court of Criminal Appeals lists ten jurisdictions where courts have held the
use of police emergency lights are sufficient to constitute a detention.  See
Garcia-Cantu, 253 S.W.3d at 245 n.43.  We agree with these cases and
conclude that a reasonable person would not feel free to leave when a police
vehicle has initiated its flashing lights and sirens after pulling up behind
that person’s vehicle.  Therefore, we hold appellant was seized for Fourth
Amendment purposes.      

                        2.
Community Caretaking Function

            A
police officer may reasonably seize an individual through the exercise of his
community caretaking function.  Wright v. State, 7 S.W.3d 148, 151 (Tex.
Crim. App. 1999).  Because a police officer’s duties involve activities other
than gathering evidence, enforcing the law, or investigating crime, the Supreme
Court has characterized a police officer’s job as encompassing a community
caretaking function.  Cady v. Dombrowski, 413 U.S. 433, 441 (1973); Corbin,
85 S.W.3d at 276.  As part of an officer’s duty to “serve and protect,” an
officer “may stop and assist an individual whom a reasonable person, given the
totality of the circumstances would believe is in need of help.”  Wright,
7 S.W.3d at 151.  The community caretaking function, however, is totally
divorced from the detection, investigation, or acquisition of evidence relating
to the violation of a criminal statute.  Corbin, 85 S.W.3d at 276–77. 
As a result, a police officer may not properly invoke his community caretaking
function if he is primarily motivated by a non-community caretaking purpose.  Id.
at 277.  

            Deputy
Ray testified he approached appellant because of the totality of the
circumstances, including appellant’s continuing failure to maintain a single
lane, his pulling onto the shoulder, and his eventual stop on the shoulder. 
Deputy Ray explained that he merely wanted to see what was going on in
appellant’s vehicle.  The trial court, as the exclusive judge of credibility
and finder of fact, could have concluded Deputy Ray was primarily motivated by
community caretaking concerns.  See Corbin, 85 S.W.3d at 277.  

            Once
it is determined that an officer is primarily motivated by his community
caretaking function, it must then be determined whether the officer’s belief
that the defendant needs help is reasonable.  Wright, 7 S.W.3d at
151–52.  In evaluating whether an officer reasonably believes that a person
needs help, courts may look to a list of four non-exclusive factors: (1) the
nature and level of the distress exhibited by the individual; (2) the location
of the individual; (3) whether or not the individual was alone and/or had
access to assistance other than that offered by the officer; and (4) to what extent
the individual, if not assisted, presented a danger to himself or others.  Id.
at 152.  In reviewing these factors, the nature and level of distress exhibited
is entitled to the greatest weight.  Corbin, 85 S.W.3d at 277.   

            Here,
the first factor, the nature and level of the distress exhibited, is low. 
Deputy Ray testified that he witnessed appellant driving at the speed limit the
entire time he was following him.  He explained he saw appellant briefly touch
the divider line with his two driver side wheels and then moved back into the
center of the lane.  The first time appellant pulled onto the shoulder it was,
by Deputy Ray’s admission, most likely to allow Deputy Ray to pass appellant,
as Deputy Ray had just passed the vehicle behind appellant.  Deputy Ray
continued to follow appellant and testified appellant was not driving
erratically.  When appellant finally stopped his vehicle on the shoulder he did
not display any level of distress.  This factor weighs against the application
of the community caretaking function.  See Eichler v. State, 117 S.W.3d
897, 902 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (a single swerve alone
does not necessarily constitute a driver in distress).    

            Regarding
the second factor, the location of the appellant, Deputy Ray testified that
they were driving on highway 105, a fairly well traveled thoroughfare with
moderate traffic at night.  The factor also weighs against the application of
the community caretaking function.  See Franks v. State, 241 S.W.3d 135,
145 (Tex. App.—Austin 2007, pet. ref’d) (finding second factor did not weigh in
favor of detention where record did not show the location was unsafe or
isolated from traffic, businesses, and residences).

            The
third factor, whether the individual was alone or had access to assistance,
supports the community caretaking function.  The record indicates appellant was
alone in his vehicle.  

            The
fourth factor, the extent to which the individual posed a danger to himself or
others if not assisted, weighs against the community caretaking function.  The
record shows at the time Deputy Ray detained appellant, he knew the following
facts: (1) appellant had been driving at the speed limit; (2) appellant drove
for a short period on the center line of the highway; (3) appellant pulled onto
the shoulder to allow Deputy Ray to pass and; (4) appellant finally pulled onto
the shoulder to stop. There was nothing to indicate to Deputy Ray that
appellant posed a danger to himself or others.  Deputy Ray testified
appellant’s driving was not unsafe or erratic.  Once appellant stopped his
vehicle, his conduct was not out of the ordinary.  Appellant could have been
easily stopping to check a map, make a cellular telephone call or a number of
other activities that would require him to stop his vehicle on the shoulder.

            Applying
the above factors, we hold Deputy Ray’s exercise of his community caretaking
function was unreasonable.  Merely pulling one’s vehicle onto the shoulder of
the road does not warrant detention by a law enforcement officer.  Furthermore,
the curiosity of an officer to see “what was going on” is not sufficient to
meet the community caretaking function.  Accordingly, we sustain appellant’s
second issue.

 

 

 

Conclusion

            Because
we hold Deputy Ray unlawfully detained appellant, we reverse and remand for a
new trial consistent with this opinion.    

 








                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Anderson and Christopher.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
Officer Ray testified the video camera in his vehicle automatically begins
recording when his headlights come on and he can also manually turn the camera
on, without initiating emergency lights or sirens.  When he manually turns on
the camera, one minute of preceding video tape, which was automatically
recorded, is saved.





[2]
The trial court stated: “[n]ext finding, when the officer turned on his lights,
that is when his investigative and caretaking stop began.  That’s when the
officer’s involvement in the stop began.”