**Affirmed and Majority and Dissenting Opinions filed December 5, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00062-CR

**ERICK LIONEL MILLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Court Cause No. 12-04-04401-CR**

## D I S S E N T I N G   O P I N I O N

Officer Cooke had no reasonable suspicion of criminal activity when he stopped the vehicle in which appellant was a passenger, and the trial judge abused her discretion in denying appellant's motion to suppress. Because the majority concludes otherwise, I respectfully dissent.

I agree with the majority that because the trial court did not issue findings of fact or conclusions of law, we must view the evidence in the light most favorable to the trial court's implied findings. However, the evidence must support the court's ruling.

I agree with the majority that appellant has standing, though merely a passenger, to challenge the validity of the stop. I also agree that there was no evidence of a violation of section 545.060 of the Texas Transportation Code.[1] And I agree that an officer's stated purpose for a stop can neither validate an illegal stop nor invalidate a legal stop because its legality rests on the totality of the circumstances viewed objectively. *See ante* p. 6; *Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).[2]

Although the majority found the evidence supports the trial court's implied finding that Cooke had a reasonable suspicion to stop the subject vehicle ("SUV"), it is unclear what criminal activity could possibly have triggered that suspicion.[3] The only evidence presented at the hearing was Cooke's testimony and a videotaped recording of the traffic stop. Both must be considered.

Cooke testified that the videotape began recording when he activated his overhead lights. The recording device is designed to begin capturing images one minute before the time of activation. When questioned by the prosecutor, Cooke

---

[1] The majority distinguishes the section 545.060 cases cited by appellant because they did not involve "evidence that the officers suspected the defendants might be intoxicated," but does not specifically address whether there otherwise was evidence of a violation in this case. *See ante* pp. 6–7. I have found no Texas cases holding that merely straddling a divider line briefly without evidence of heavy traffic or otherwise unsafe conditions constitutes a violation of 545.060.

[2] Although the majority purports not to reach appellant's argument that Cooke was not exercising a "community caretaking" function, which I agree does not apply here, *see infra* p. 5 n.5, it appears to accept the officer's testimony in this regard. *See ante* pp. 2, 3, 8. I would not credit that testimony to support a reasonable suspicion of intoxication.

[3] The majority holds that the trial court could have reasonably concluded that Cooke "observed driving behavior that reasonably led him to believe appellant was driving while intoxicated, asleep [*sic*], over-medicated, or otherwise impaired" and, thus, that Cooke did not stop the vehicle solely for failing to maintain a single lane. *See ante* p. 8. This leaves it unclear, however, just what criminal activity the majority is stating supported the stop. A lane change while sleepy? While over-medicated? While otherwise impaired? While intoxicated? Does the majority consider all of these behaviors criminal?

testified that it was "possible" that there was a traffic violation that did not appear on the videotape, but he did not articulate any. On cross-examination, Cooke acknowledged that he only observed the SUV cross the dividing line on one occasion, and he could not recall any instance that drew his attention to the SUV other than what appeared on the videotape. He further acknowledged that the movement of the SUV was not erratic but was a "slow drift" over the dividing line.

The majority emphasizes the officer's training and law enforcement experience. *See ante* pp. 2, 7–8. What training and experience did Cooke testify to? The officer has 21 years' law enforcement experience and 2,400 training hours in unspecified subjects. He has made countless traffic stops, including hundreds for failure to maintain a single lane of traffic. He has taken part in a number of narcotics investigations, most of them involving traffic stops. Cooke attended a class called Desert Snow, which taught him to look for "dope and money in vehicles" and "how to deal with people that move dope and money." Cooke testified that he was trained to look for indicators such as out-of-state plates and other things that would give him suspicion that somebody is involved in moving drugs north. He has made hundreds of drug-related traffic stops where he has found drugs.

Although not mentioned by the majority, Cooke testified that one of the things that could have drawn his attention to the SUV was the fact it had Michigan plates and was traveling along a known drug corridor. He further acknowledged that the out-of-state license plate may have been a factor in his decision to stop the SUV. Cooke additionally testified that he did not initiate the stop until he had driven alongside the SUV and observed the driver. The majority, instead, focuses on Cooke's answering "yes" to the question, "And have you in the course of your experience often encountered folks that did the same thing that Ms. Downs did

3

that, in fact, were based on your experience intoxicated, sleepy, overmedicated, drowsy, whatever?" However, neither Cooke nor the majority take the additional step of explaining how observing the SUV slowly and briefly drift over a lane dividing line (not established to be an illegal act under the circumstances presented) gave Cooke reasonable suspicion to stop the SUV in the absence of additional observations. *See generally Coble v. State*, 330 S.W.3d 253, 277 & n.62 (Tex. Crim. App. 2010) (explaining that a matter cannot be established merely by the ipse dixit of a witness no matter how well-qualified; the basis of the statement must be shown, linking the conclusions to the facts).

The videotape reveals that the SUV was traveling in the center lane of a three-lane divided highway at a constant speed. No other vehicle passed or was passed by either Cooke or the SUV before the stop, which occurs at about the one minute and forty-five second mark of the videotape. As Cooke approached the SUV from behind in the right-hand lane, the SUV drifted towards the left. The videotape is not definitive, but the left wheels of the SUV may have straddled the dividing line between the center and left lanes for a few seconds. At highway speeds, the few seconds could have covered "hundreds of feet," as testified to by Cooke. As Cooke dropped back and moved to the center lane, the SUV drifted back into the center of its lane, where it remained. Rather than pulling over the SUV at this time, however, Cooke continued into the left lane and accelerated until he drew even with the SUV driver's window. Only then did Cooke drop behind the SUV and initiate the traffic stop.

In order to stop the vehicle based on a reasonable suspicion of the possibility of intoxication,[4] Cooke needed to have specific and articulable facts known to him,

---

[4] If the majority intended to identify other criminal activity that would validate the stop, this argument applies to that conduct also.

4

coupled with his training, general experience, and rational inferences from those facts, such that it would objectively justify the conclusion that the action taken by the officer was appropriate. *Davis v. State*, 947 S.W.2d 240, 243-44 (Tex. Crim. App. 1997). The reasonableness of a detention is determined from a totality of the circumstances. *Eichler v. State*, 117 S.W.3d 897, 900 (Tex. App.—Houston [14th Dist.] 2003, no pet.). We determine, using an objective standard, whether the facts available to the officer at the moment of detention would warrant a person of reasonable caution to believe that the action taken was appropriate. *Id*. In the present case, the sole evidence concerning intoxication was Cooke's statement that the driver might be "sleepy, intoxicated, overmedicated." The officer did not provide observations, other than a "slow drift" over the dividing line to support his opinion that the driver of the SUV might be intoxicated. *See Castro v. State*, 227 S.W.3d 737, 742 (Tex. Crim. App. 2007); *see also Bass v. State*, 64 S.W.3d 646, 649-50 (Tex. App.—Texarkana, 2001, pet. ref'd) (holding officer's testimony of swerving was not sufficient to carry burden of presenting articulable facts demonstrating the reasonableness of traffic stop on suspicion driver was intoxicated, noting officer did not provide additional circumstances, such as time, location, or the vehicle's movement, that would have led a reasonable officer to suspect driver was intoxicated). Although Cooke additionally testified that he observed the SUV had Michigan plates and was traveling along a known drug corridor and that he did not initiate the traffic stop until he had driven alongside the SUV and observed the driver, neither the State nor the majority suggests that these additional factors objectively justified the stop as a reasonable one.

As seen on the videotape, there was no action on the part of the driver of the SUV aside from briefly straddling the lane divider that would indicate intoxication. Therefore, the validity of the stop is not countenanced on the theory of reasonable

5

suspicion of intoxication. *See Ehrhart v. State*, 9 S.W.3d 929, 930 (Tex. App.—Beaumont 2000, no pet.); *see also Graham v. State*, No. 08-03-00315-CR, 2005 WL 182691, at *2 (Tex. App.—El Paso Jan. 27, 2005, no pet.) (not designated for publication) (holding evidence was insufficient to support reasonable suspicion to stop motorist for suspected intoxication where vehicle briefly contacted curb one time).[5]

At the suppression hearing, the State failed to demonstrate that Cooke possessed knowledge of specific and articulable facts sufficient to objectively justify the conclusion that stopping the SUV was an appropriate action. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). As the subsequent search of the vehicle is a fruit of the illegal stop, the evidence obtained from the search should have been suppressed. Accordingly, the trial court erred in overruling the motion to suppress. *See State v. Mazuca*, 375 S.W.3d 294, 306 (Tex. Crim. App. 2012); *Viveros v. State*, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992); *Smith v. State*, 58 S.W.3d 784, 793-94 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). I would reverse the judgment and remand the case for further proceedings.

/s/    Martha Hill Jamison
       Justice

Panel consists of Chief Justice Frost and Justices Boyce and Jamison (Jamison, J., dissenting).

Publish — Tex. R. App. P. 47.2(b).

---

[5] At two points in his testimony, Cooke stated that his primary motivation for stopping the vehicle was community caretaking; however, the circumstances presented do not meet the standards set forth by the Court of Criminal Appeals for validating such stops. *See Corbin v. State*, 85 S.W.3d 272, 277-78 (Tex. Crim. App. 2002). Therefore, the stop was not supported by Cooke's reference to the community caretaking function. The Majority purports not to reach this issue.