**Affirmed and Memorandum Opinion filed September 22, 2016.**



**In The**

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-15-00621-CR

**COLTON WEAVER LINDAMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th District Court
Harris County, Texas
Trial Court Cause No. 1431265**

## M E M O R A N D U M   O P I N I O N

Appellant Colton Weaver Lindaman appeals his conviction for driving while intoxicated with a child passenger. Before trial, appellant moved to suppress evidence on the ground that the traffic stop during which it was obtained was not justified by the community caretaking function. After the trial court denied the requested relief, appellant pleaded guilty with an agreed punishment recommendation. The trial judge then found appellant guilty and sentenced him to

two years in state jail, probated for five years, and a $500 fine pursuant to the plea agreement. Appellant now challenges the denial of his motion to suppress. We affirm.

## I. Background

On June 7, 2014, Harris County Sheriff's Deputy A.G. Turman was on patrol during the night shift. Shortly after 2:00 a.m., Turman observed appellant driving down a public roadway and noticed his inability to maintain a single lane. The roadway consisted of two eastbound lanes and two westbound lanes, separated by a raised median. Turman, who was following behind appellant, turned on his dash-camera. The dash-camera video began recording thirty seconds prior to its activation and captured the entirety of Turman's observations. The video supports Turman's testimony that appellant continually weaved within the right-hand, eastbound lane, crossed over the dividing line into the left-hand lane at least twice, and appeared to strike the right-side curb twice.[1] The video shows two other vehicles passing appellant in the left-hand lane. The video further supports Turman's testimony that the vehicles took wide paths around appellant, with at least one of them almost striking the raised median on the left-hand side in doing so. Turman stated that he believed appellant was creating a hazardous situation for himself and others. Turman explained that he was concerned there was something going on inside appellant's vehicle that he needed to check on, such as medical distress, driver distraction, or intoxication.

Turman turned his siren on and initiated a traffic stop. When Turman contacted appellant to make sure he was all right, Turman noticed the smell of alcohol on appellant's breath. Turman also discovered two minor passengers in

---

[1] Turman testified and the video was shown at the hearing on appellant's motion to suppress.

appellant's vehicle. Turman then administered sobriety tests to appellant and subsequently arrested him on suspicion of driving while intoxicated.

## II. Discussion

In a single issue, appellant challenges the trial court's denial of his motion to suppress all evidence obtained as a result of the traffic stop. He contends that the traffic stop was not reasonable pursuant to the officer's stated community caretaking rationale.

### A. Standards of Review

When reviewing a trial court's ruling on a motion to suppress, we apply an abuse-of-discretion standard; accordingly, we will overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We use a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts and mixed questions of law and fact that turn on the credibility of a witness; we apply a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Id.* at 922–23.

The reviewing court views the evidence in the light most favorable to the trial court's ruling. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

The Fourth Amendment to the United States Constitution protects persons

3

from "unreasonable searches and seizures." U.S. Const. amend. IV. Generally, law enforcement may not search or seize an individual without a warrant based on probable cause. *Wright v. State*, 7 S.W.3d 148, 150 (Tex. Crim. App. 1999). However, warrantless searches and seizures of automobiles and the individuals found therein may be reasonable under some recognized circumstances. *Id*. The United States Supreme Court has recognized a "community caretaking function" as one of these recognized circumstances. *Id*. at 151 (citing *Cady v. Dombrowski*, 413 U.S. 433 (1973)). The community caretaking function allows an officer, as part of his duty to "serve and protect," to stop a vehicle not because of any evidence of criminal activity, but out of reasonable concern for the driver's health or safety. *Id*. However, "a police officer may not properly invoke his community caretaking function if he is primarily motivated by a non-community caretaking purpose." *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002).

A two-step inquiry is used to determine whether an officer properly invoked his community caretaking function: (1) whether the officer was primarily motivated by a community caretaking purpose, and (2) whether the officer's belief that the individual needed help was reasonable. *Gonzales v. State*, 369 S.W.3d 851, 854-55 (Tex. Crim. App. 2012). To determine whether a police officer acted reasonably in stopping an individual to determine if he needed assistance, courts consider four non-exclusive factors:

> (1) the nature and level of distress exhibited by the individual,
>
> (2) the location of the individual,
>
> (3) whether or not the individual was alone or had access to assistance independent of that offered by the officer, and
>
> (4) to what extent the individual—if not assisted—presented a danger to himself or others.

*Id.* at 855. In weighing these factors, the totality of the circumstances must be

considered. *Id*. While the first factor is entitled to the most weight, it is not always dispositive, and the presence or absence of the three remaining factors may impact how the particular level of exhibited distress is viewed. *Id*.

## B. Reasonable Belief

Turman testified that he did not stop appellant due to a traffic violation; he stopped him out of concern for appellant's safety and that of other drivers. Appellant concedes that the record therefore supports the trial court's conclusion on the first step of the inquiry. Accordingly, we turn to the second step of the inquiry, considering whether Turman's belief that appellant needed help was reasonable.

### 1. Nature and Level of Distress

The first factor in the analysis, which carries the most weight in determining whether an officer reasonably stopped an individual, is the nature and level of distress exhibited by the individual. *Id*. at 855. Turman testified that he believed appellant to be in distress because he was weaving within his own lane, veering into the left lane, and striking the right-side curb. The dash-camera video supports Turman's testimony that appellant's driving suggested significant distress of some sort. Turman stated that based on his past experiences, such driving usually indicated driver inattention, vehicle trouble, a driver in medical distress, or sometimes intoxication. As stated in *Gonzales*, "[i]n evaluating reasonableness in this context, courts have never required an officer to know, with any degree of certainty, the specific distress an individual may be suffering." *Id*. at 856.

Appellant cites several cases in which simple weaving within a lane or a single incidence of drifting into an adjacent lane was deemed insufficient evidence of distress; however, the conduct observed in each of these cases is readily

distinguishable from the repeated lack of control appellant demonstrated in this case. *See, e.g., Corbin*, 85 S.W.3d at 277-78 (officer observed defendant cross outside roadway line for about one second and saw no other remarkable behavior before stopping him); *Scardino v. State*, 294 S.W.3d 401, 403 (Tex. App.—Corpus Christi 2009, no pet.) (officer described defendant weaving within a single lane and crossing one time over the outside line); *Eichler v. State*, 117 S.W.3d 897, 901-02 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[T]he cause for [the officer's] concern was a single instance of swerving over the dividing line. It was not continual swerving or swerving accompanied by any other erratic behavior."). Given the level of apparent distress Turman observed in this case, this most important factor weighs heavily in favor of the traffic stop being reasonable.

### 2. Location

The second factor is appellant's location–which could affect the likelihood of other opportunities to receive aid or the danger posed to appellant and others. Although the beginning portion of the video reveals long stretches of undeveloped areas, appellant encountered well-lit, open business properties before Turman initiated the traffic stop. The intersection where the stop occurred held a gas station and a CVS pharmacy. There also was considerable traffic at that intersection, given the early morning hour. In *Gonzalez*, the Court of Criminal Appeals determined that the driving location supported the reasonableness of the stop when there were no houses nearby, only a few businesses and minimal traffic. 369 S.W.3d at 856. Here, when the stop was initiated, there appears to have been several open businesses and numerous other vehicles around. This factor therefore weighs somewhat against the reasonableness of the stop.

### 3. Access to Other Assistance

Regarding the third factor, it was unclear whether appellant had assistance

independent of that offered by the officer. The record is silent regarding whether the officer knew there were passengers in the vehicle. Based on the dash-camera video, it appears impossible to see clearly inside the vehicle. Appellant states "it is worth considering that almost every single driver on the roadway carries with them a cellular telephone and multiple vehicles have on-board systems to call for help (e.g. OnStar)." While an interesting point, there is no suggestion here that Turman would have known whether appellant or any nearby driver had access to a cell phone or an on-board system. This factor, therefore, does not add significantly to the analysis.

### 4. Danger to Self and Others

The extent to which appellant presented a danger to himself or others if not assisted, the fourth factor, also weighs heavily in favor of the stop. Turman testified that he believed appellant presented a danger to himself and to others if not assisted. Turman observed appellant crossing over the center line on at least two occasions, striking the curb at least twice, and weaving within his own lane. Apparently because of appellant's erratic driving, two other vehicles drove well to the left of their lane in passing him, and the video showed numerous other vehicles at the next intersection. As Turman stated, "This type of driving causes accidents."

Appellant again cites *Corbin* and *Eichler* to show instances when drivers were unreasonably stopped after making one short, unusual driving maneuver. But, as explained above, these cases are readily distinguishable because the questionable maneuvers occurred only once and for a brief period of time. *Corbin*, 85 S.W.3d at 277-78; *Eichler*, 117 S.W.3d at 901-02. Appellant here made several distinct and hazardous driving maneuvers and did not drive safely for a sustained stretch. *Cf. Zuniga-Hernandez v. State*, 473 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding weaving across roadway lines several times

constituted driving that was a danger to the driver and others); *Gajewski v. State*, 944 S.W.2d 450, 453 (Tex. App.—Houston [14th Dist.] 1997, no writ) (same).

Viewing the evidence in the light most favorable to the trial court's order, although the location where appellant was driving suggests to some degree that a stop was not warranted, the strong indications of distress and the danger to appellant and others support the trial court's conclusion that the stop was reasonable under the totality of the circumstances. Accordingly, we overrule appellant's sole issue.

We affirm the trial court's judgment.


/s/     Martha Hill Jamison
        Justice


Panel consists of Justices Jamison, Donovan, and Brown.
Do Not Publish — TEX. R. APP. P. 47.2(b).